In re NETWORK EQUIPMENT
TECHNOLOGIES, INC.,
LITIGATION.

This Order relates to ALL ACTIONS.

No. C–90–1138 DLJ.

United States District Court,
N.D. California.

Feb. 12, 1991.

Robert C. Schubert, Law Offices of Robert C. Schubert, San Francisco, Cal., Blake Harper, Milberg, Weiss, Bershad, Specthrie & Lerach, San Diego, Cal., Stuart Savett, Kohn, Savett, Klein & Graf, Philadelphia, Pa., for plaintiff Robert M. Smith.

Dana Welch and Tower C. Snow, Jr., Shearman & Sterling, San Francisco, Cal., for defendants Network Equipment Technologies, Inc., Daniel Warmenhoven and Steven Schlumberger.

K. Louise Francis and Douglas M. Schwab of Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendant Barrett Roach.

Paul H. Dawes, Latham & Watkins, San Francisco, Cal., for defendant Bruce Smith.

## ORDER

JENSEN, District Judge.

This matter came on for hearing before this Court on February 6, 1991. Dana Welch of Shearman & Sterling presented arguments on behalf of defendants Network Equipment Technologies, Inc., Daniel Warmenhoven and Steven Schlumberger. K. Louise Francis of Heller, Ehrman, White & McAuliffe argued on behalf of defendant Barrett Roach. Paul Dawes of Latham & Watkins appeared representing defendant Bruce Smith. For the reasons set out below, defendant Network Equipment Technologies, Inc.'s motion to dismiss, which is joined by defendant Barrett Roach, is GRANTED IN PART AND DENIED IN PART. Defendant Barrett Roach's additional and separate motion to dismiss is GRANTED IN PART AND DENIED IN PART. Finally, defendant Bruce Smith's motion to dismiss is DENIED.

## I. BACKGROUND.

These motions arise in a securities fraud class action relating to Network Equipment Technologies, Inc., ("NET.") NET manufactures and sells high-tech communications products that allow a business with geographically disparate offices to link their personnel through a computer based network. NET stock is traded publicly through major exchanges.

In simplest terms, plaintiffs allege that defendant NET and certain managers of NET defrauded the purchasers of NET stock through a three step fraud. First, defendants fraudulently caused the financial records of NET to depict inflated and false sales, revenue, and profit figures. For example, plaintiffs allege that defendants inflated sales and revenue figures by shipping large quantities of goods to "customers" who had not ordered the goods, and by improperly recording revenue from these unordered "sales."

Second, defendants fraudulently caused the value of NET stock to rise by communicating the false and inflated financial records to investors in NET stock through letters, SEC filings, press releases, communications with independent financial analysts, and other means. Finally, the individual defendant managers profited by selling their own NET stock at the fraudulently inflated price.

Plaintiffs allege that this scheme fell apart when NET losses began to mount as customers refused to pay for unordered goods and NET was forced to either accept the return of the goods or complete sales through substantial discounts and other unprofitable incentives. NET's losses allegedly became impossible to hide, and management was forced to announce that financial figures previously provided to the SEC and released to the public were wrong. The value of NET stock dropped as a result of these announcements.

Plaintiffs' first amended complaint was subject to a motion to dismiss brought by defendants and granted by the Court's Order of October 19, 1990 (the "October 19 Order.") In the October 19 Order the

Court found, among other things, two flaws in plaintiffs' complaint.

First, the Court found that certain allegations of fraud did not meet the particularity requirements of Federal Rule of Civil Procedure[1] 9. In particular:

Paragraphs 34, 40–42, and 46 of the Amended Complaint allege unattributed misrepresentations which were communicated in unidentified forms to financial analysts and the press. These allegations fail to allege specifically *either* particular misrepresentations by identified defendants, *or* particular misrepresentation published through identified forms of group published information.

Second, the Court found that plaintiffs had failed to properly allege a claim for conspiracy to commit securities fraud. The Court explained, "To adequately plead conspiracy, Plaintiffs must plead specifically with regard to each Defendant the existence of an agreement and acts in furtherance of that agreement." Since plaintiffs plead neither an agreement nor acts in furtherance with particularity, their conspiracy claim was dismissed.

In addition to dismissing aspects of the complaint, the Court also upheld the plaintiffs' amended complaint in certain respects. Most relevant here, the Court applied the definition of recklessness adopted by the Ninth Circuit in *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990), and found that plaintiffs complaint alleged recklessness sufficient to give rise to the "inference of scienter" required to state a claim under Rule 10b–5.[2] The Court also noted that the Ninth Circuit in *Hollinger* expressed its approval of respondeat superior claims in the securities fraud context and granted plaintiffs leave to amend their complaint to state a claim against defendants under a respondeat superior theory of liability.

On November 20, 1990, plaintiffs filed their Second Consolidated Amended Class Action Complaint, (the "second amended complaint,") which attempted to cure the two flaws identified above, restated plaintiffs' claim under Rule 10b–5, and added allegations supporting a respondeat superior theory of liability. On December 19, 1990, defendants filed the present motions to dismiss. Defendants NET, Daniel Warmenhoven ("Warmenhoven"), and Steven Schlumberger ("Schlumberger") argue that plaintiffs' second amended complaint *(1)* still fails to meet the scienter pleading requirements of *Hollinger, (2)* can not state a claim for respondeat superior liability, and *(3)* pleads conspiracy without sufficient particularity.

Defendant Barrett Roach ("Roach") joins NET, Warmenhoven, and Schlumberger's motion. Roach also argues *(4)* that particular allegations against fraud by Roach continue to fall short of the particularity requirement of Rule 9. Finally, defendant Bruce Smith ("Smith") separately attacks plaintiffs' conspiracy claims on grounds similar to those stated by NET, Warmenhoven and Schlumberger.

## II. ANALYSIS.

After reviewing the legal standard applied by the Court upon a motion to dismiss, the Court will treat defendants' four attacks on the second amended complaint in turn.

### A. The Standard Of Review Applied Upon A Motion To Dismiss.

The question presented by a motion to dismiss is not whether a plaintiff will prevail in the action, but whether a plaintiff is entitled to offer evidence in support of his claim. "[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In the Ninth Circuit, the Court making this determination must

1. Hereinafter, the "Rules" or the "Rule."

2. All references to "Rule 10b–5" refer collectively to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Securities Exchange Commission Rule 10b–5, 17 C.F.R. 240.10b–5.

assume that plaintiff's allegations are true, construe the complaint in a light most favorable to plaintiff, and resolve every doubt in plaintiff's favor. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981).

Therefore, the Court will dismiss the complaint or any claim in it without leave to amend only if "it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir.1987) *quoting Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.1980) (per curiam).

### B. Scienter Has Been Adequately Alleged Under Hollinger.

The role of scienter as an element of fraud under Rule 10b–5 was set out by this Court in its October 19 Order:

Scienter is an element of both primary and secondary liability under Rule 10b–5. Scienter has been defined recently by the Ninth Circuit to embrace the specific intent to commit wrongful acts or recklessness, when reckless is defined as ... an extreme departure from the standards of ordinary care ... which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it. *Hollinger v. Titan Capital*, 914 F.2d 1564, 1569 (9th Cir.1990) *quoting Sunstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1045 (7th Cir.) *cert. den.*, 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977).

While general averment of scienter is sufficient under Rule 9, cases interpreting Rule 10b–5 have held that to state a claim under Rule 10b–5 the plaintiff must also allege specific facts that give rise to "an inference of scienter." *Ross v. A.H. Robbins Co., Inc.*, 607 F.2d 545, 558–59 (2nd Cir.1979) *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980), *reh. denied*, 448 U.S. 911, 100 S.Ct. 3057, 65 L.Ed.2d 1140.

■ Given the definition of scienter, the requirements of Rule 9, and the case law, to sufficiently allege scienter plaintiffs must: (1) Generally aver knowledge or recklessness, *and either* (2) allege particular facts that give rise to an inference that each defendant actually knew of the alleged fraudulent conduct, *or* (3) allege fraudulent conduct that is such "an extreme departure from ordinary care" that the "danger of misleading buyers or sellers ... is so obvious that the actor must have been aware of it." *Hollinger*, 914 F.2d at 1569.

■ Applying this standard in the October 19 Order, the Court found that plaintiffs first amended complaint sufficiently alleged scienter. It is undisputed that plaintiffs' complaint contains general allegations of knowledge and recklessness. Moreover, plaintiffs complaint alleges facts giving rise to an inference of scienter:

Plaintiffs have specifically alleged that th[e] practices of shipping unordered goods and misreporting revenues occurred on a large scale, affecting over 20% of NET total sales, and occurred continuously over period of six months. This practice reflects "an extreme departure from the standards of ordinary care" in the operation of a business and presents a danger of misleading investors—who commonly rely on revenue figures—that "is so obvious that the [Defendants] must have been aware of it." *citing Hollinger, id.*

In addition, the Court noted that plaintiffs specific allegations of insider trading also raised an inference of scienter. *In re 3COM Securities Litigation*, [1990 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,279 at 96,247 (N.D.Cal.1990); *In re Genentech, Inc. Securities Litigation*, [1989–90 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,960 at 95,372, 1989 WL 201577 (N.D.Cal.1989) (finding a "strong inference of scienter" where "Genentech was misstating revenue through the use of misleading accounting practices [and] [t]his material inside information remained unknown to other stockholders until late September 1988, by which time the ... [D]efendants had allegedly sold more than 500,000 shares of their Genentech stock.")

Defendants NET, Warmenhoven and Schlumberger now revisit the Court's analysis of scienter in the October 19 Order with two arguments. Neither of these arguments are persuasive.

First, these defendants argue that the October 19 Order underestimated the stringency of *Hollinger's* definition of recklessness. They argue that *Hollinger* established the proposition that only "egregious recklessness" will meet the requirements of *Hollinger*. Consequently, plaintiffs allegations of scienter are insufficient in two ways: (1) their general averments allege only "recklessness" not egregious recklessness, and (2) plaintiffs allegations fail to give rise to an inference of recklessness which is sufficiently "egregious."

As to the first point, *Hollinger* defined recklessness as a form of scienter, it did not eliminate recklessness as a form of scienter. Thus, general averment of recklessness is sufficient so long as the complaint also contains allegations which give rise to an inference of recklessness which is sufficient to meet the definition stated in *Hollinger*.

As to the second point, the terms of *Hollinger* speak for themselves. In that portion of the opinion expressly addressed to the definition of recklessness the Ninth Circuit applied the standard stated and applied in the October 19 Order and repeated here. While the *Hollinger* court does use the term "egregious" once to explain that the definition of recklessness it adopts is "more egregious" than negligence or even gross negligence, *id.* at 1570, the Court does not adopt the definition of "egregious recklessness" urged by defendants.

Defendants' argument for a separate standard of "egregious recklessness" is, at root, a revisitation of the argument under *Hollinger* which they offered in their mo-

tion to dismiss the first amended complaint. As a motion for reconsideration, defendants' argument fails entirely.[3]

In a second discrete argument, defendants offer certain facts which suggest that defendants did not know of, and were not reckless in disregarding, the fraud alleged here. For example, defendants urge the Court to take judicial notice of the fact that outside accounts audited and approved NET's financial records. In addition, defendants ask the Court to take judicial notice of the fact that defendants sold no more stock than usual given the defendants trading histories, and that defendants lost a lot of money when the alleged fraud was uncovered and the value of NET stock dropped.

Upon a motion to dismiss, the Court must assume that plaintiff's allegations are true, construe the complaint in a light most favorable to plaintiff, and resolve every doubt in plaintiff's favor. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981). The Court should not use judicial notice to generate an evidentiary record and then weigh evidence—which plaintiffs have not had the opportunity to challenge—to dismiss plaintiffs complaint. While defendants arguments on the facts may ultimately prevail upon a motion for summary judgment or at trial, they do not create a basis for dismissing plaintiffs' complaint.

For the reasons set out above, the Court will deny defendants' motion to dismiss plaintiffs' claim under Rule 10b–5 for failure to sufficiently allege scienter.

### C. Plaintiffs May Use The Doctrine Of Respondeat Superior In A Securities Fraud Suit Against A Corporation And Corporate Insiders.

■ In addition to re-defining recklessness, the *Hollinger* court overturned the

---

**3.** A motion for reconsideration will be granted only when there is a "strongly convincing" basis for setting aside the Court's prior ruling, such as an intervening change in controlling law or the availability of new decisive evidence. *All Hawaii Tours v. Polynesian Cultural Center*, 116 F.R.D. 645, 649 (D.Hawaii 1987); *Kern–Tulare Water District v. City of Bakersfield*, 634 F.Supp. 656, 665 (E.D.Cal.1986).

Defendants argued their interpretation and application of *Hollinger* strenuously in support of their motion to dismiss the October 19 Order. There has been no change in controlling law or the evidentiary record which would provide a "strongly convincing" basis for overturning the ruling of the October 19 Order.

"entrenched" Ninth Circuit rule that the vicarious liability provisions of section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78t(a)) [4] and section 15 of the Securities Act of 1933 (15 U.S.C. § 77*o*) [5] supplant the common law doctrine of respondeat superior in the securities fraud context. *Hollinger*, 914 F.2d at 1578. On the basis of *Hollinger*, plaintiffs second amended complaint alleges the respondeat superior liability of defendant NET.

Defendants now move to dismiss plaintiffs respondeat superior claim. Defendants posit that *Hollinger* did not embrace respondeat superior liability in securities fraud cases generally. Instead, as defendants see it, *Hollinger* only endorsed respondeat superior liability in fraud suits brought against securities broker-dealers. Defendants are not broker-dealers, and, consequently, plaintiffs' respondeat superior allegations against them should be dismissed.

While defendants' narrow reading of *Hollinger* is not without support, it is not the best reading of *Hollinger*. The breadth of the respondeat superior doctrine endorsed by *Hollinger* is most apparent in the Court's analysis of the relation between the common law doctrine of respondeat superior and vicarious liability under Sections 15 and 20(a). As discussed in *Hollinger*, respondeat superior is a broad common law doctrine which antedates the legislation of Sections 15 and 20(a) in 1933 and 1934 respectively. *Hollinger*, 914 F.2d at 1577–78. Thus, in defining the doctrine the Ninth Circuit relies on broad general principles stated in the Second Restatement of Agency, and quotes a definition offered by Professor Seavey of the Harvard Law School in 1934. *Id.* at 1577 n. 28 (citing Restatement (Second) of Agency §§ 219, 257, and 261) (citing Seavey, "Speculations as to 'Respondeat Superior,' *Harv. Legal Essays* 433 (1934) ("a master or other principle is responsible, under certain conditions, for the conduct of a servant or other agent.")

Analyzing the legislative history of Sections 15 and 20, the Ninth Circuit found that the purpose of these provisions is not to alter or constrict the application of the respondeat superior in the securities fraud context. *Id.* at 1577–78. Rather, these provisions create additional vicarious liability which reaches defendants who are not otherwise liable under the doctrine of respondeat superior. *Id.* For example, Section 20(a), which imposes "control person" liability, extends vicarious liability for securities fraud to "persons who are not subject to respondeat superior but who nevertheless control the wrongdoer." *Id.* at 1578.

In this light, the doctrine of respondeat superior embraced by the Court is the old traditional common law doctrine identified by Professor Seavey and the Restatements. This doctrine contains no limitation which would limit its application exclusively to broker-dealers.

Of course, a broad interpretation of *Hollinger* raises a number of questions, and defendants are quick to point them out. First, defendants argue that to impose respondeat superior liability would "eviscerate" the "good faith" defense available to a "control person" defendant under Section 20(a). Under Section 20(a) a person who controlled a wrongdoer may escape liability by showing that the defendant attempted in good faith to prevent the wrong through appropriate training, supervision, and so forth. *See Paul F. Newton & Co.*, 630 F.2d 1111, 1132 (5th Cir.1980). Where the control person is also a principal or master of an agent wrongdoer, respondeat superior liability renders the good faith defense irrelevant.

As an initial matter, whether or not respondeat superior "eviscerates" the good faith defense under Section 20(a) is irrelevant to scope of respondeat superior here. If the evisceration of the good faith defense were sufficient to bar the use of respondeat superior, then it would be sufficient to bar the doctrine in the context of broker-dealers and corporations alike.

---

**4.** Hereinafter, "Section 20(a)."

**5.** Hereinafter, "Section 15."

More importantly, in *Hollinger,* the Ninth Circuit expressly addresses and resolves the issue of the relation between the good faith defense and respondeat superior. "Because the liability of persons under § 20(a) represents an extension of liability beyond that imposed by common law, such persons are afforded statutory defenses not available in the principal-agent context. Controlling persons [who are not otherwise liable under common law] may thus avoid liability ... by demonstrating that they acted in good faith." *Id.* at 1578. Thus, the "good faith" defense limits the application of Section 20(a): Section 20(a) and the "good faith" defense do not limit the application of respondeat superior.

Second, defendants correctly note that respondeat superior liability "negates" the scienter requirement of Rule 10b–5. As this Court wrote in the October 19 Order, "[s]cienter is [generally treated as] an element of both primary and secondary liability under Rule 10b–5." *See Robin v. Arthur & Young & Co.,* 915 F.2d 1120, 1126 (7th Cir.1990). Respondeat superior liability establishes a form of secondary liability which does not require actual knowledge or recklessness on the part of the vicariously liable principal, and, as a result, conflicts with scienter requirement of Rule 10b–5.

However, while this conflict is not insignificant, it has no relation to the question at hand, *ie.* whether or not respondeat superior should apply to broker-dealers *and* corporations. If the conflict between respondeat superior and the scienter requirement of Rule 10b–5 were fatal to the adoption of respondeat superior, then this conflict would have barred the Ninth Circuit from adopting respondeat superior in *any* securities fraud case. Indeed, for this Court to narrow the scope of respondeat superior on the basis of this conflict would contradict one implied ruling of *Hollinger:* To wit, the scienter conflict between respondeat superior and Rule 10b–5 is not sufficient to bar the adoption of respondeat superior in the securities fraud context.

Third, defendants argue that securities broker-dealers occupy a special place in the national economy, and are regularly singled out for especially stringent regulation within the securities laws. *Kersh v. General Council of Assemblies of God,* 804 F.2d 546, 550 (9th Cir.1986) (identifying broker-dealers as "a special case" meriting stricter standards for secondary liability under Section 20(a)). Hence, defendants argue, the Court should treat respondeat superior as just another of the special rules applicable only to broker-dealers.

This argument has two flaws. First, while the Ninth Circuit has closely scrutinized the activities of broker-dealers, it has never limited the application of any form of secondary liability exclusively to broker-dealers. Indeed, in *Kersh v. General Council of Assemblies of God,*[6] which is relied on by defendants, the Ninth Circuit rejected a per se rule that would distinguish broker-dealers from non broker-dealers. Instead, the Ninth Circuit looked to the practical relationship of a superior church body to a local church to determine if the superior church body was a "control person" under Section 20(a). *Kersh,* 804 F.2d at 550–52. The Ninth Circuit noted that failure to supervise may establish vicarious liability for brokers and non-brokers alike where superior knew of fraud, had the power to control the inferior, and/or participated financially in the fraud.

Equally important, in adopting respondeat superior in *Hollinger,* the Ninth Circuit relied entirely on the statutory analysis discussed above, and never discussed the special treatment of broker-dealers as a reason for bringing respondeat superior into securities fraud suits. Defendants are not asking the Court to lay bare a limitation that is already woven into the reasoning of *Hollinger.* Rather defendants seek a new limitation that the Court must cut from whole cloth and attach through its own initiative. This sort of legislative adjudication is best left to the appellate courts.

Finally, defendants argue that a broad interpretation of *Hollinger* cannot be reconciled with the law of other circuits, at

---

**6.** 804 F.2d 546 (9th Cir.1986)

least one of which does not apply respondeat superior liability to corporations. *See Sharp v. Coopers & Lybrand,* 649 F.2d 175, 182–83 (3rd Cir.1981). This insight is correct, but not because national authority is uniformly, or even predominantly, in favor of limiting respondeat superior liability to broker-dealers. A broad interpretation of *Hollinger* cannot be reconciled with the law of other circuits because the law of other circuits is contradictory and irreconcilable: Some circuits apply respondeat superior to corporations. *See In re Atlantic Financial Management Corporation, Inc.,* 784 F.2d 29 (1st Cir.1986); *Kerbs v. Fall River Industries, Inc.,* 502 F.2d 731 (10th Cir.1974). Others do not. *Sharp,* 649 F.2d at 182–83. And with regard to others it is simply impossible to tell. *See Hollinger,* 914 F.2d at 1576 n. 27 (discussing the law of the Fourth and Sixth Circuits). There is no basis in national legal authority for preferring a broad or narrow interpretation of *Hollinger.* Consequently, the broad interpretation which has been supported at length above, should prevail.

For the reasons set out above, defendants motion to dismiss plaintiffs respondeat superior allegations will be denied.

*D. Plaintiffs' Conspiracy Allegations.*

■ In the October 19 Order the Court wrote, "To adequately plead conspiracy, Plaintiffs must plead specifically with regard to each Defendant the existence of an agreement and acts in furtherance of that agreement. *In re Thortec Securities Litigation,* [1989 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 94,330 (N.D.Cal.1989)." Defendants now argue that the conspiracy allegations in plaintiffs' second amended complaint should be dismissed because they fail to meet the specificity requirement enunciated in the October 19 Order. To resolve this argument the Court must explain the specificity requirement of the October 19 Order in more detail.

In their first amended complaint, which was the subject of the October 19 Order, plaintiffs did not offer even conclusory allegations that each defendant had entered into an agreement. Instead, plaintiffs asked the Court to presume an agreement based on, among other things, the nominal status of defendants as corporate officers. *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433 (9th Cir.1987). The Court refused to apply a status based presumption and dismissed plaintiffs' conspiracy allegations.

With this background in mind, the October 19 Order should be read to require sufficient specificity to move plaintiffs' conspiracy allegations beyond the level of status based pleading. Plaintiffs are not required to plead their evidence, or to plead facts which are peculiarly within the control of defendants, such as the nature and terms of the conspiratorial agreement. *Deutsch v. Flannery,* 823 F.2d 1361, 1366 (9th Cir.1987). However, plaintiffs must allege facts that connect each defendant with the conspiracy by some means other than their nominal status as directors or officers of NET.

Plaintiffs' conspiracy allegations meet this standard—more or less. With regard to the existence of an agreement, plaintiffs have alleged that each individual defendant entered into a conspiratorial agreement, the rough time the agreement was entered, and certain terms and goals of the alleged agreement. Second Amended Complaint at ¶¶ 12, 18. These allegations are sufficient. The details of an illegal conspiracy is information peculiarly within the control of defendants. Consequently, under Rules 9 and 8 plaintiffs are not required to plead the details of a conspiracy to defraud in exact detail. *Deutsch,* 823 F.2d at 1366. To require otherwise would significantly hinder, if not bar, legitimate conspiracy claims. *Id.*

Defendants allegations of acts in furtherance of the conspiracy are also sufficient as to defendants Warmenhoven, Roach, and Smith. Plaintiffs allege that each of these defendants made particular fraudulent misrepresentations that furthered the conspiracy by further misleading investors as to success of NET as a business venture and as to the value of NET's stock. Second Amended Complaint ¶¶ 18, 28–51.

These allegations specifically allege acts in furtherance of the conspiracy.[7]

■ However, plaintiffs allegations regarding defendant Schlumberger are not sufficient. Plaintiffs have alleged no overt acts in furtherance by defendant Schlumberger. Instead, in an attempt to meet the terms of the October 19 Order, plaintiffs allege that the absence of acts in furtherance—*i.e.* Schlumberger's total silence and inaction—is itself an act in furtherance because it failed to prevent or hinder the operation of the conspiracy.

Whether silence and inaction can never constitute "acts in furtherance" is not resolved by the October 19 Order. But the October 19 Order does establish that status based pleading is insufficient to state a claim for conspiracy under the circumstance of the present case. Plaintiffs allegations regarding Schlumberger amount to status based pleading in disguise. Hence, plaintiffs allegations of conspiracy regarding Schlumberger are insufficient, and plaintiffs conspiracy claim against Schlumberger should be dismissed.

For the reasons set out above, defendants Warmenhoven and Smith's motion to dismiss plaintiffs' conspiracy claims will be denied. In addition, defendant Schlumberger's similar motion will be granted.

### E. Certain Allegations Against Defendant Roach Do Not Meet The Specificity Requirement of Rule 9(b).

■ Rule 9 provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Interpreting this rule, the Court held in the October 19 Order that to allege fraud plaintiffs must specifically plead *"either* particular misrepresentations by identified defendants, *or* particular misrepresentation published through identified forms of group published information" that would give rise to a presumption that the misrepresentation originated from certain directors and officers of NET. *See Semegen v. Weidner,* 780 F.2d 727, 731, 735 (9th Cir.1985) (allegations stating time, place, and manner of representation meet the requirements of Rule 9). The Court went on to strike paragraphs which alleged misrepresentations by third party financial analysts—not "identified defendants"—published independently of NET—not through "group published information."

Now plaintiffs have amended and restated the paragraphs previously stricken by the Court. Second Amended Complaint at ¶¶ 34, 40–42, 46. Plaintiffs now attempt to link the misrepresentations by third party financial analysts with "identified defendants" by averring in a generic way that the representations by third parties were "based on" information originating from defendant Roach, "inasmuch as he was the person primarily responsible for communicating on behalf of NET with analysts and was the Company's principal officer over." Second Amended Complaint at ¶ 34; *see* Second Amended Complaint at 40–42, 46.

These generic representations fail to meet the terms of the October 19 Order or Rule 9. No representations of any kind by Roach are specifically alleged. Indeed, plaintiffs do not even allege that third party financial analysts repeated other unidentified statements by Roach. Plaintiffs only allegation is that, because of Roach's *status* at NET, the Court *might presume* that he passed unidentified misinformation onto third party financial analysts at an unidentified time and place and in an unidentified manner.

As the Court indicated in the October 19 Order, the Ninth Circuit only applies such a status based presumption to "group published information," and independently published statements by financial analysts are not "group published information." Consequently, plaintiffs allegations in para-

---

7. Defendants argue that signing letters, SEC filings, and issuing press releases, are not in themselves unlawful, and are the routine activities of officers and directors of corporations. The implication of defendants argument is that plaintiffs allegations are still essentially status based and should be dismissed. This argument has no merit. Signing letters, etc. is routine. However, signing letters and other documents that contain fraudulent misrepresentations of fact is neither routine nor lawful.

graphs 34, 40–42, and 46 of the second amended complaint are insufficient and will be stricken.

### III. CONCLUSION.

For the reasons set out above, defendants NET, Warmenhoven, and Schlumberger's motion to dismiss plaintiffs' claim for violations of Rule 10b–5 is DENIED. Defendants NET, Warmenhoven, and Schlumberger's motion to dismiss plaintiffs' respondeat superior claim against NET is also DENIED.

Defendants NET, Warmenhoven and Smith's motion to dismiss plaintiffs' conspiracy claims is DENIED. However, defendant Schlumberger's motion to dismiss plaintiffs' conspiracy claim against him is GRANTED.

Defendant Roach's motion to strike paragraphs 34, 40–42, and 46 of the second amended complaint is GRANTED.

Finally, the parties shall appear before this Court for status conference on Wednesday, April 17, 1991, at 9:00 a.m. The parties shall file status conference statements before the status conference in conformity with the local rules.

IT IS SO ORDERED.