## In re NEWBRIDGE NETWORKS SECURITIES LITIGATION.

### No. 90–1061 (JHG).

United States District Court, District of Columbia.

June 18, 1991.

Steven J. Toll, Andrew N. Friedman, Cohen, Milstein & Hausfeld, Washington, D.C., and Daniel L. Berger, Edward A. Grossman, Richard A. Speirs, Bernstein, Litowitz, Berger & Grossman, New York City, for plaintiff.

Terence H. Matthews, Peter D. Charbonneau, Peter C. Madsen, Ann T. Burks, Hunton & Williams, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Pending before the Court is defendants' motion to dismiss the above-captioned complaint.[1]  On consideration of the motion, the opposition, the reply, the current law,

1. All references to the complaint are to the Consolidated Class Action complaint filed December 3, 1990.

after a hearing in open court, and for the reasons outlined below, the motion is denied as to most claims. The pending motion for continuance is also denied, and the parties are directed to proceed in this case as ordered below.

## I

Briefly stated,[2] the plaintiffs in this case—not certified as a class[3]—initiated this action against the following: Newbridge Networks Corporation ("Newbridge"), a Canadian corporation that designs, manufactures, and markets integrated digital networking products, and its subsidiary Newbridge Networks, Inc.; Terrence H. Matthews ("Matthews"), Chairman of the Board and President of Newbridge, as well as its largest stockholder; Peter D. Charbonneau ("Charbonneau"), Vice President of Finance and Chief Financial Officer of Newbridge; and Peter Madsen ("Madsen"), President of Newbridge Networks, Inc. and a member of Newbridge's Board of Directors. The plaintiffs bring this matter as a class action on behalf of all persons who purchased the common stock of Newbridge from the date of Newbridge's initial public offering, July 28, 1989, through June 6, 1990.

Plaintiffs charge that defendants violated §§ 11, 12(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(2), 77o, as well as §§ 10(b) and 20(a) of the Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b–5, by the filing of a false and misleading Prospectus, Registration Statement and quarterly reports with the SEC.

## II

In viewing a motion to dismiss, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). At this stage, the Court must accept as true the factual allegations of the complaint, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984), and draw from them all reasonable inferences in favor of plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Because this motion is addressed to the face of the complaint, matters not alleged or included therein are beyond the scope of the Court's consideration at this juncture.

## A. Section 11

To state a claim under § 11, the complaint must allege that the defendant signed a securities registration statement that contained material misrepresentations or omissions that were unknown to the plaintiff purchasers of the securities. To establish a *prima facie* case, plaintiffs need only show a material misstatement or omission. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983). Defendants argue as a preliminary matter that plaintiffs lack standing to bring their claim because they did not allege that they were purchasers at the initial distribution of shares. Defendants further contend that plaintiffs have failed to state a claim because the pertinent statements identified in the complaint are either (1) not material, or (2) are not misrepresentations or omissions because they are forward-looking or they are taken out of context of the Prospectus as a whole.

Initially, it must be observed that the Prospectus as a whole is not part of the complaint and therefore is not before the Court at this time, except for those pas-

---

2. As the Court indicated to the parties at oral argument on this motion, the exigencies of the calendar prevent the Court from presenting in writing the full analysis it did give in consideration of the issues.

3. A motion for class certification is still pending. In light of the continuation of this case, the Court will permit the parties to supplement their pleadings on this issue as directed in the Order included at the end of this Memorandum Opinion.

sages from it that plaintiffs quote.[4] Accordingly, the Court will look only to the Complaint's factual allegations in determining this issue. *See Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989).

■ Based on the complaint, it is concluded that plaintiffs have alleged sufficient facts to establish standing because they have stated that the shares purchased are traceable to the offering covered by the registration statement. Plaintiff Marble is alleged to have purchased shares of common stock on the day of the offering. Complaint ¶¶ 7, 90. It cannot be said, therefore, that plaintiffs could prove no set of facts that would support standing under § 11.

■ The same conclusion is reached with regard to whether plaintiffs have alleged material misrepresentations or omissions. Whether a statement is material in this context is a mixed question of law and fact. *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976). Accordingly, "[o]nly when the disclosures or omissions are so clearly unimportant that reasonable minds could not differ should the ultimate issue of materiality be decided as a matter of law." *Craftmatic Securities Litigation v. Krafstow,* 890 F.2d 628, 641 (3d Cir.1989) (citing *TSC Industries,* 426 U.S. at 450, 96 S.Ct. at 2133; *Berg v. First American Bankshares, Inc.,* 796 F.2d 489, 495 (D.C. Cir.1986)).

■ Materiality means that "there is a substantial likelihood that, under all the circumstances," the misrepresentation or omission "would have assumed actual significance in the deliberations of the reasonable shareholder." *TSC Industries,* 426 U.S. at 449, 96 S.Ct. at 2132. Thus, "[t]he violation of federal law stems from the substantial likelihood that disclosure 'would have been viewed by the reasonable

investor as having significantly altered the "total mix" of information' available." *Craftmatic,* 890 F.2d at 639 (quoting *TSC Industries,* 426 U.S. at 449, 96 S.Ct. at 2132).

Plaintiffs allege the following misrepresentations and omissions in the prospectus: (1) problems with product quality and market acceptance were not revealed, Complaint ¶¶ 58–63, 72–73; (2) problems with Newbridge's accounts receivable were explained as a result of product shipments being concentrated near the end of each quarter, when in fact they stemmed from quality problems, *id.* ¶¶ 27, 29, 53, 57, 74, 83(b), 83(d), 83(f), 83(g); (3) the negative effect on future profits of the high-risk nature of the company's research and development activities was not disclosed, *id.* ¶¶ 32, 59–60, 83(e); and (4) the negative effect on future profits of the increasing expenses of the company's infrastructure were not mentioned, *id.* ¶¶ 77, 83(c). It is impossible to say that these alleged deficiencies in the Prospectus are so palpably unimportant that they are immaterial as a matter of law; whether, in the end, they are material is a question of fact not properly resolved on a motion to dismiss.[5]

■ Furthermore, the fact that certain of plaintiffs' allegations center on forward-looking statements by defendants does not doom their claim at this time. "Projections and general expressions of optimism may be actionable under the federal securities laws." *In re Apple Computer Securities Litigation,* 886 F.2d 1109, 1113 (9th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990). The Ninth Circuit explained:

A projection or statement of belief contains at least three implicit factual assertions: (1) that the statement is genuinely believed, (2) that there is a reasonable basis for that belief, and (3) that the

---

**4.** Extraneous material may be considered but only if it is attached to the complaint or incorporated by reference, and limited quotation does not constitute incorporation by reference. *Goldman v. Belden,* 754 F.2d 1059, 1066 (2d Cir.1985).

**5.** Defendants' argument that, viewed in context of the Prospectus as a whole, and its risk disclosures in particular, these matters were in fact not misleading or omitted, is not appropriate at this stage of the proceedings and will be left to the trier of fact (or to subsequent motions for summary judgment).

speaker is not aware of any undisclosed facts tending to seriously undermine the accuracy of the statement. *A projection or statement of belief may be actionable to the extent that one of these implied factual assertions is inaccurate.*

*Id.* (emphasis added). In the instant complaint, to cite one example, plaintiffs assert that defendants knew that problems existed with accounts receivable and quality control, but defendants did not reveal that these problems necessitated significant increases in expenditures on Newbridge's infrastructure, which in turn would decrease Newbridge's profitability. Complaint ¶¶ 28, 77, 83(c). Accordingly, they have adequately alleged that defendants did not genuinely believe their projections, did not have a reasonable basis for their beliefs, or that they were aware of undisclosed matters that would undermine the accuracy of the statements. *See Goldman v. Belden,* 754 F.2d 1059, 1069 (2d Cir.1985) (given defendants' positive predictions, and plaintiffs' allegations of knowledge of undisclosed negative factors, complaint stated claim under § 10(b) and Rule 10b–5); *accord, e.g., Klein v. Goetzmann,* 745 F.Supp. 107 (N.D.N.Y.1991); *Flashman v. Singleton,* [Current Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 95,872, 1991 WL 83963 (N.D.Cal.1991); *In re Adobe Systems, Inc. Securities Litigation,* 767 F.Supp. 1023 (N.D.Cal.1991).

### B. Section 12(2)

■ This section of the Securities Act only permits suit against a person who "offers or sells a security" by means of a defective prospectus. Defendants here contend that the allegations of Count II of the complaint do not establish that they are sellers within the meaning of the statute. Furthermore, they argue that, as a matter of law, aiding and abetting liability does not exist under this statute. Defendants prevail on both points.

The Supreme Court recently construed the meaning of "seller" for the purposes of § 12(1) in *Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), and virtually every court has subsequently applied its holding to § 12(2). *See Craftmatic,* 890 F.2d at 635 (citing cases). *Pinter* teaches that, *inter alia:* (1) there must be some direct relationship between the defendant and the plaintiff (although it is not limited to persons who pass title, 108 S.Ct. at 2076); (2) the defendant must be more than a remote participant rendering incidental professional services; (3) indirect involvement in the sale of securities is not sufficient.[6]

Defendants insist that plaintiffs have not alleged that the defendants were sellers, and that in any event, they could not so allege because the subject securities were admittedly sold through underwriters.[7] In essence, defendants are arguing that they are the "sellers' sellers," not statutory sellers. *Pinter,* 486 U.S. at 644, 108 S.Ct. at 2077 n. 21. They urge the Court to find that plaintiffs have not demonstrated defendants' "direct and active participation in the solicitation of the immediate sale[s]," as is necessary to hold defendants liable, *Craftmatic,* 890 F.2d at 636, arguing that their activity "amount[ed] to no more than the steps any corporation must take in issuing securities," Motion to Dismiss at 42.

The complaint does aver that defendants were direct and active participants in the immediate sale—the initial public offering—but "[b]y means of the Offering Materials." Complaint ¶ 89. Significantly, nowhere does the complaint state that plaintiffs "purchased from" defendants, or that defendants sold directly to plaintiffs. The complaint alleges that Newbridge offered 2.5 million shares *through its underwriters,* ¶ 23; and that defendants "solicited" sales via their "participation in the prepara-

---

**6.** Plaintiffs must also show that defendants' activity was "motivated at least in part by a desire to further [their] own financial interests or those of the securities owner." 108 S.Ct. at 2079. That defendants have such a motive is not contested.

**7.** The underwriters were dismissed as defendants from this case by joint stipulation on December 4, 1990.

tion of the Offering Materials, participation in meetings with the Underwriters, and assistance to the Underwriters in their promotional efforts to market Newbridge stock. The Offering Materials also represent that Newbridge is the offeror of stock." *Id.* ¶ 89. Even read generously, these averments do not make defendants statutory sellers. The Supreme Court emphasized that "[t]he 'purchase from' requirement of § 12 focuses on the defendant's relationship with the plaintiff-purchaser." 108 S.Ct. at 2081. No such relationship is indicated here, except through intermediaries.[8] Nor do plaintiffs assert that defendants directly "solicit[ed] ... an offer to buy"[9] from plaintiffs. *See* 108 S.Ct. at 2078.

The only participation by defendants in the sale of the securities consisted of "meetings" with their underwriters and collaboration on the preparation of the offering materials. Assistance of that kind clearly does not constitute direct sale within the plain meaning of the statutory language, and has been held to be insufficient to declare defendants sellers. *See Friedman v. Arizona World Nurseries, Ltd.,* 730 F.Supp. 521 (S.D.N.Y.1990). Involvement in the creation of the prospectus also does not rise to the level of direct solicitation or sale. *Craftmatic,* 890 F.2d at 636. It appears that plaintiffs would have the Court apply a "substantial factor" test in judging whether a party is a statutory seller, for under such a test, which "focuses on the defendant's degree of involvement in the securities transaction and its surrounding circumstances," *Pinter,* 108 S.Ct. at 2081, their allegations might survive a motion to dismiss. The Supreme Court expressly rejected that approach, however. *Id.* at 2080–81. Here, absent any allegation of direct contact of any kind between defendants and plaintiff-purchasers, the Court rules as a matter of law that defendants are not statutory sellers. *See In re Gas Reclamation, Inc. Securities Litigation,* 733 F.Supp. 713, 723–24 (S.D.N.Y. 1990).[10]

■ For similar reasons, plaintiffs' attempt to impose aider-abettor and conspiracy liability on defendants under § 12(2) also fails. The prevailing, and in this Court's opinion correct, view is that such a claim cannot be brought under § 12(2). The language of the statute expressly limits liability to those who offer or sell. "Moreover, it would be anomalous to recognize aider and abettor liability in light of *Pinter*'s clear direction that § 12(2) does not extend to collateral participants.... § 12(2) provides for civil liability and a rescission remedy and, therefore, is not analogous to criminal or tort law, where aider and abettor liability has been recognized." *Craftmatic,* 890 F.2d at 636–37; *see also Schlifke v. Seafirst Corp.,* 866 F.2d 935 at 942 (7th Cir.1989); *In re Worlds of Wonder Securities Litigation,* 721 F.Supp. 1140, 1148 (N.D.Cal.1989). This same reasoning applies to conspiracy. *See Epstein v. Haas Securities Corp.,* 731 F.Supp. 1166, 1185 (S.D.N.Y.1990).

Accordingly, Count II, comprising plaintiffs' claims under § 12(2), shall be dismissed.

## C. Section 10(b) and Rule 10b–5

■ A complaint must set forth six elements to state a claim under § 10(b) and Rule 10b–5: (1) a material misstatement or omission, (2) scienter—an intent to deceive or defraud, (3) in connection with the purchase or sale of a security, (4) through the use of interstate commerce or a national securities exchange, (5) upon which plaintiffs relied, and (6) which caused injury to plaintiffs. *E.g. Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986). Defendants focus

---

**8.** *Cf. Craftmatic,* where the Third Circuit held that the following allegations in a complaint survived a motion to dismiss for failure to state a claim that the defendants were statutory sellers: "Each of the defendants ... either *sold said securities directly to plaintiffs....*' or solicited plaintiffs.... to buy Craftmatic common stock ... and in so acting were motivated by a desire to serve their own financial interests or the

financial interests of Craftmatic securities...." *Craftmatic,* 890 F.2d at 637 (emphasis added) (quoting complaint).

**9.** § 2(3), 15 U.S.C. § 77b(3) (defining "sale" or "sell").

**10.** Given this conclusion, defendants' standing argument need not be considered.

their attack in this context [11] on the elements of scienter and reliance in particular. Defendants further challenge the viability of the aider and abettor and conspiracy claims under the 1934 Securities Act. The Court addresses each of these matters in turn.

### 1. *Scienter.*

■ As with any allegation of fraud, a claim of securities fraud must meet the requirements of Fed.R.Civ.P. 9(b), which states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Motive, intent, knowledge, and other conditions of mind of a person may be averred generally." To this end, courts require that a complaint specify what statements were made in what documents or in what context, the time and place of such statements, who made the statements, the manner in which the statements were misleading, and what the defendants obtained as a consequence of the statements. *E.g., Cosmas,* 886 F.2d at 11. Where, as here, multiple defendants are involved, the complaint must apprise each defendant of the specific nature of his or her participation in the fraud. *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). As for intent, which may consist of knowledge of falsity or reckless disregard for the truth, an inference thereof may be established by allegations of fact showing either a motive for and clear opportunity to commit fraud, or circumstances indicating conscious behavior by the defendants. *See Cosmas,* 886 F.2d at 13; *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

■ The Court concludes that the complaint meets the particularity standard of Rule 9(b), especially when read in the generous manner demanded in the context of a motion to dismiss. Plaintiffs allege that defendants "knowingly and recklessly issued, caused to be issued, participated in the issuance of ... deceptive and materially false and misleading statements to the investing public." Complaint ¶ 98. Viewed in isolation, that conclusory statement does not suffice. However, the complaint also specifies the statements plaintiffs contend are misleading, adequately details when and where these statements were made and by whom, and identifies situations indicating conscious behavior by defendants. *E.g.,* ¶¶ 39, 41 (describing statements made by Matthews, Charbonneau, and Newbridge in First Annual Report); ¶¶ 52–58 (describing Matthews' and Newbridge's explanations of accounts receivable at analysts meeting on January 22, 1990 in New York); ¶ 64 (providing quotations from Madsen in specified *Communications Week* article dated Jan. 29, 1990); ¶ 83 (alleging why statements described were misleading); ¶ 99 (detailing facts defendants allegedly knew that made their statements deceptive). *See Cosmas,* 886 F.2d at 12; *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1440 (9th Cir.1987);[12] *Goldman,* 754 F.2d at 1069–70. *Cf. In re Network Equipment Technologies, Inc. Litigation,* 762 F.Supp. 1359 (N.D.Cal.1991) (initial amended complaint failed to plead with particularity where allegations specified neither particular misrepresentations by identified defendants, or particular misrepresentation published through identified forms of group published information). Here there are sufficient facts alleged from which it can be inferred, at least, that defendants acted consciously. *See Balsam v. Eastchester Financial Corp.,* [Current Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,877, 1991 WL 41901 ((N.D.Cal.1991). Moreover, motive may also be inferred (financial gain, *e.g.,* Complaint ¶ 89). Accordingly, these claims shall not be dismissed.

---

11. They address the materiality question in their arguments concerning §§ 11 and 12(2), and given the Court's disposition of those claims they need not be reconsidered here.

12. "In cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other 'group-published information,' it is reasonable to presume that these are the collective actions of the officers."

#### 2. *Reliance.*

Defendants contend that the § 10(b) and 10b–5 claims also fail because the complaint does not adequately plead plaintiffs' reliance. In their complaint, plaintiffs aver: "In ignorance of the false and misleading nature of the representations described above, plaintiffs and other members of the Class relied, to their detriment, on the integrity of the market as to the price of these securities. Alternatively, plaintiff and other members of the Class relied on the material misstatements and omissions of the defendants." Complaint ¶ 102. Defendants charge that plaintiffs' "fraud on the market" theory of reliance is not viable.

■■ In claims under § 10(b) and 10b–5, plaintiffs must usually show individual reliance on the allegedly fraudulent statements. Under the "fraud on the market" theory, however, plaintiffs have the benefit of a presumption that they indirectly relied on the alleged misstatement by relying on the integrity of the stock price established by the market. *In re Apple Computer Securities Litigation*, 886 F.2d at 1113–14. As the Supreme Court has explained, in such circumstances a shareholder is entitled to rely on the ability of the market to properly evaluate all material information and the consequent reflection of that information in the price of the stock. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 991–92, 99 L.Ed.2d 194 (1988). This theory, therefore, "rests on the assumption that the price of an actively traded security in an open, well-developed and efficient market reflects all the available information about the value of a company." *Freeman v. Laventhol & Horwath*, 915 F.2d 193, 197 (6th Cir.1990).

■■ Defendants contend that this theory is not available to plaintiffs because the market for Newbridge stock was not efficient, an essential element of the theory. *See, e.g., Freeman, supra; In re Apple Computer Securities Litigation, supra; Hurley v. Federal Deposit Insurance Corp.*, 719 F.Supp. 27 (D.Mass.1989); *Reingold v. Deloitte Haskins & Sells*, 599 F.Supp. 1241 (S.D.N.Y.1984). They urge

this conclusion as a matter of law on the grounds that the complaint is based on the following facts: Newbridge shares were offered in an initial public offering; secondary trading of the shares in the United States occurred in the over-the-counter market; and, the alleged class period only covers less than one year of public trading of the shares. Because their second argument is without merit, *see, e.g., Hurley*, 719 F.Supp. at 33 (principles underlying theory are equally valid with respect to over-the-counter transactions so long as they are efficient), the Court need only consider the significance of the fact that these were shares offered in an initial public offering and only for a short time.

A sampling of case law on this subject provides some guidance. The Sixth Circuit has examined the question in some detail. For example, in *Freeman*, 915 F.2d at 198, the court noted that the theory would not apply to cases that do not involve "an impersonal exchange in the open market." Similarly, a court found that because investments in oil and gas limited partnerships could not be obtained on an open market, the theory could not be used. *Platsis v. E.F. Hutton & Co.*, 642 F.Supp. 1277 (W.D.Mich.1986), *aff'd*, 829 F.2d 13 (6th Cir.1987), *cert. denied*, 485 U.S. 962, 108 S.Ct. 1227, 99 L.Ed.2d 427 (1988). And in *Freeman*, the Sixth Circuit ruled that a primary market for newly issued municipal bonds was neither efficient nor developed. 915 F.2d at 199. Perhaps most apposite here are those cases stating that investors in new issues cannot rely on the integrity of the market to determine a price for issue. *E.g., Shores v. Sklar*, 647 F.2d 462 (5th Cir.1981) (en banc), *cert. denied*, 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983); *Dalton v. Alston & Bird*, 741 F.Supp. 1322 (S.D.Ill.1990). These courts, among others, have held that "an investor in a new issue obviously cannot rely on the integrity of the market to determine a price for [the] issue; therefore, in a new issue case, to show reliance the purchaser must show that the bonds were not entitled to be marketed at any price." *Dalton*, 741 F.Supp. at 1327. Accepting these argu-

284

ments would mean at most that plaintiffs have no § 10(b) and 10b–5 claims as to the initial public offering. Yet plaintiffs also allege fraudulent statements during the entire class period, so their complaint, in any event, would survive as to any shares purchased after the initial offering.

Plaintiffs do allege that Newbridge's "common stock is traded on an active and efficient market and is followed by numerous stock market analysts. Had the adverse facts defendants concealed been disclosed, Newbridge stock would not have sold at the artificially inflated prices it did during the Class Period." Complaint ¶ 100. In this manner, plaintiffs have averred that there was information available to the investing public, and that this information affected the price. In any event, arguably the market was active, according to the complaint; the complaint states that there were over 33 million outstanding shares during the Class period, *id.* ¶ 16, that 3,750,000 shares were sold pursuant to the initial public offering, *id.* ¶ 23, and that 1.2 million shares of Newbridge common stock was traded on December 14, 1989, *id.* ¶ 49. Further, it appears that the market did process and react to information about the company, as indicated by the complaint's allegation that after an announcement by Newbridge that its earnings and revenues projections for the fourth quarter of 1990, the stock declined $1 and ⅜. *Id.* ¶ 76. *See Hurley,* 719 F.Supp. at 34 (complaint alleging that bank issued approximately 5 million shares of stock, that the stock was actively traded with a volume of more than 19.3 million shares traded during the class period sufficed to invoke fraud on the market theory); *Reingold,* 599 F.Supp. at 1264 (denying motion to dismiss where plaintiff suggests active market existed and provides some support therefor, resolution of whether subject securities were traded in efficient market requires further proof).[13]

These facts, in combination with the allegations that the shares are actively traded, are sufficient to raise a substantial question as to whether the relevant market was efficient. Questions of reliance, like questions of materiality, are highly fact-based. The issue merits further factual development and therefore survives the motion to dismiss.[14]

### 3. *Aiding and Abetting and Conspiracy Claims.*

To state a claim of aider and abettor liability, a complaint must allege the existence of the primary fraud, knowledge by the aider and abettor of the fraud, and substantial assistance to the fraud. *E.g., Investors Research Corp. v. Securities and Exchange Commission,* 628 F.2d 168, 178 (D.C.Cir.), *cert. denied,* 449 U.S. 919, 101 S.Ct. 317, 66 L.Ed.2d 146 (1980). Defendants contend that plaintiffs did not adequately plead knowledge. Defendants assert that the allegations in ¶ 98 of the Complaint, which aver that defendants knowingly made certain misstatements or knowingly omitted material facts, are nonspecific and cannot support a claim of scienter. However, that paragraph is followed by ¶ 99, which sets forth what statements were knowingly made and which specifically refers to the supporting factual averments in earlier paragraphs of the complaint. *See King v. E.F. Hutton & Co.,* No. 86–0211 (D.D.C. Mar. 13, 1987) slip op. at 11, 1987 WL 8733 at 2, 1987 U.S.Dist. LEXIS 13212 at 6–7. Furthermore, Rule 9(b) only requires that knowledge "may be averred generally."

As for the conspiracy argument, the Court reaches the same result for similar reasons. Conspiracy liability requires knowledge plus an agreement with the wrongdoer, and wrongful acts committed in furtherance of the conspiracy. *Friedman,* 730 F.Supp. at 533 n. 5 (citing cases).

13. The Court also notes that many of the cases relied on by defendants were decided on motions for summary judgment—in other words, after there had been affidavits and declarations proffering testimony and other evidence, including expert testimony, as to the nature of the markets at issue.

14. Moreover, plaintiffs have alternatively alleged that they directly relied on defendants' material misstatements and omissions. Complaint ¶ 102.

Defendants' contention that plaintiffs have failed to allege acts by individual defendants is meritless, as is evident from the complaint, Complaint ¶¶ 13, 14, and from this Court's discussion of the § 11 claims, for example. Plaintiffs have alleged "facts that connect each defendant with the [alleged] conspiracy by some means other than their nominal status as directors or officers" of Newbridge, *see Network Equipment Technologies*, 762 F.Supp. 1359, such as the allegation that defendants made misleading presentations at an analysts' meeting, for example. *See* Complaint ¶¶ 53–55.

While plaintiffs could have been more specific as to the roles of the defendants, they have alleged enough to withstand a motion to dismiss on these grounds.[15]

### III

Defendants have moved to extend their time to respond to plaintiffs' motion for class certification and to produce documents in response to plaintiffs' request for production,[16] primarily on the ground that the Court had not yet ruled on the pending motion to dismiss. Their motion is denied in light of this Memorandum Opinion. Recognizing that defendants adhered to some degree to the deadline for filing their opposition to the motion for class certification, and in light of ongoing discovery efforts, the Court shall permit defendants to supplement their opposition and plaintiffs to supplement their reply, according to the schedule set forth below.

### IV

Accordingly, it is hereby

ORDERED that defendant's motion to dismiss is denied save for those specific matters noted in this Memorandum Opinion and in the Orders below; it is

FURTHER ORDERED that defendants' motion is granted with respect to plaintiffs' claims under § 12(2); it is

**15.** Defendants' one-paragraph argument that the 10(b) and the 10b–5 claims must be dismissed for failure to plead due diligence is baseless. *See* Complaint ¶ 86.

FURTHER ORDERED that Count II of the complaint is dismissed; it is

FURTHER ORDERED that defendants supplement their opposition to plaintiffs' motion for class certification on or before July 26, 1991; it is

FURTHER ORDERED that plaintiffs supplement their reply to defendants' opposition on or before August 5, 1991.

**16.** This motion also requested oral argument on the motion to dismiss, which oral argument was heard on May 31, 1991.