**Elena DEL CAMPO, et al., Plaintiffs,**

v.

**George KENNEDY, et al., Defendants.**

**No. C 01–21151 JW.**

United States District Court,
N.D. California,
San Jose Division.

Dec. 5, 2006.

Paul Arons of Friday Harbor, WA, Deepak Gupta of Public Citizen in Washington, DC, Ronald Wilcox of San Jose, and O. Randolph Bragg, Horwitz, Horwitz & Associates, Ltd., Chicago, IL, for Plaintiff.

Charles D. Jenkins and Charles F. Perkins of San Francisco, for Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS; GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED CONSOLIDATED COMPLAINT**

JAMES WARE, District Judge.

## I. INTRODUCTION

In 1985, the California Legislature created a misdemeanor diversion program to address the growing problem of accused bad check writers inundating the state's criminal courts. Cal. Pen.Code § 1001.60 et seq. The diversion program is intended to provide a feasible alternative to criminal prosecution by offering bad check writers a chance to pay their debts and clear the incident reports against them without risking criminal prosecution. Santa Clara County adopted the program, and District Attorney George Kennedy ("District Attorney") subsequently contracted with American Corrective Counseling Services, Inc. ("ACCS") to run the Santa Clara County Bad Check Restitution Program ("Bad Checks Program").

Plaintiffs bring this class action alleging, *inter alia,* that Defendants engaged in a pattern of behavior in implementing the diversion program that violate their due process under the Fourteenth Amendment, 42 U.S.C. § 1983, and the California Constitution, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, as well as other related state statutory and tort laws.

Presently before the Court are three separate motions to dismiss: 1) Defendants' Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) (*See* Docket Item No. 200); 2) Defendant American Corrective Counseling Services, Inc.'s Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) (*See* Docket Item No. 211); and 3) Individual Defendants' Motion to Dismiss Plaintiffs' Consolidated Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6) (*See* Docket Item No. 214). The Court conducted a hearing on July 10, 2006. Based on the papers filed to date and oral arguments of counsel, the Court GRANTS in part and DENIES in part Defendants' motions.

On October 10, 2006, Plaintiffs also filed a Motion for Leave to File Amended Consolidated Complaint Adding Representa-

tive Plaintiff. (*See* Docket Item No. 249.) Defendants have filed a statement of non-opposition to the motion. (*See* Docket Item No. 259.) The Court found it appropriate to take the motion under submission without oral argument. *See* Civ. L.R. 7–1(b). In light of the Court's ruling with respect to the Defendants' motions to dismiss, the Court GRANTS Plaintiffs leave to file an Amended Consolidated Complaint.

## II. BACKGROUND

Plaintiffs are Elena del Campo ("del Campo"), Ashorina Medina ("Medina"), Miriam R. Campos and Lisa Johnston (collectively, "Plaintiffs"). Defendants are: American Corrective Counseling Services, Inc. ("ACCS"), Don R. Mealing ("Mealing")[1], Lynn Hasney ("Hasney")[2], Bruce D. Raye ("Raye")[3], Mr. Green, R.D. Davis, Mr. Kramer, Mrs. Lopez,[4] (collectively "Individual Defendants"), Inc. Fundamentals ("Fundamentals"), Fundamental Performance Strategies ("Strategies"), Fulfillment Unlimited ("Fulfillment"), ACCS Administration ("ACCS Admin."), Inc., (collectively "ACCS Defendants") and George Kennedy in his official capacity as the Santa Clara County District Attorney ("District Attorney") (all defendants collectively "Defendants").

### A. Basic Allegations

Plaintiffs allege the following:

Defendants engaged in a pattern of behavior in implementing the diversion program that violate Plaintiffs' constitutional and statutory rights. This pattern begins when bounced checks are referred to Defendants from various retail merchants for collection. (Consolidated Complaint, hereafter, "Compl." ¶¶ 69–70, Docket Item No. 196.) The merchants originally refer checks to the District Attorney, who then decides whether or not the check writer should be referred to the diversion program. Upon referral, ACCS Defendants instruct the merchants not to communicate with Plaintiffs. ACCS Defendants also send Plaintiffs a letter purporting to be from the Santa Clara District Attorney's Bad Check Restitution Program. The letter explains that Plaintiffs can avoid criminal prosecution for allegedly violating California Penal Code 476(a) by enrolling in the optional Bad Checks Program, without any admissions of guilt. (Compl. ¶¶ 72–73; Ex. 1.) The letter also instructs Plaintiffs to make checks out to the Bad Checks Program, listing fees currently owed from their bounced check, an administration fee of $35, and the diversion program fee. (Compl. ¶¶ 36, 45, 50, 56, 59; Exs. 1, 4, 6, 8, 9, 11 & 12.)

After receiving the letter, Plaintiffs either 1) tendered payments toward satisfying the original dishonored check, 2) tendered payments for the original check and the administration fee, or 3) did not send in any payment at all. (Compl. ¶¶ 34–68.) ACCS Defendants kept a portion of any payments tendered and informed the merchant that Plaintiffs tendered less than the full amount of the bounced check. As a result, Plaintiffs have not satisfied their debts to the merchants. *Id.* In all instances,

---

1. Defendant Mealing, as alleged, is or was employed as President of ACCS.

2. Defendant Hasney, as alleged, is or was employed by ACCS as Executive Vice President of Operations.

3. There is no allegation as to who Defendant Raye is or was.

4. The docket reflects that Defendants Green, Davis, Kramer and Lopez have not been served.

Plaintiffs had no intentions of participating in the Bad Checks Program, never indicated such intentions, and never completed the Bad Check Program Enrollment Form. *Id.*

Plaintiffs were subsequently sent additional letters from ACCS Defendants. The letters: 1) indicated that Plaintiffs have failed to respond to the previous letters; 2) reiterated that Plaintiffs had the option of enrolling in the Bad Checks Program and paying the balance of their "cases;" and 3) warned them that failure to comply could result in the District Attorney filing a criminal complaint. In all cases, Plaintiffs have not paid the full amounts ACCS Defendants claim they owe, nor have any of the Plaintiffs been prosecuted for writing bad checks. *Id.*

Plaintiffs allege eight claims: violation of 1) Due Process under the Fourteenth Amendment, 42 U.S.C. § 1983 ("§ 1983"), 2) Due Process under the California Constitution, Article I, Section 7 ("Art. I, § 7"), 3) California Constitution, Article I, Section 1, 4) Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), 5) California Unfair Business Practices Act, Cal. Bus. & Prof.Code §§ 17200 *et seq.* ("§ 17200") and for 6) conversion, 7) fraudulent misrepresentation, and 8) negligent misrepresentation.

## B. *Procedural History*

This case is a consolidated case between *del Campo v. Kennedy*, Case No. 01–21151 JW and *Medina v. Mealing*, Case No. 03–2611 JW. In the original suit, Plaintiff del Campo filed a class action against the Defendants for violations of her Due Process rights pursuant to § 1983 and Art. I, § 7. Plaintiff del Campo also alleged violations of the FDCPA and § 1700. Upon Defendants' motion, the Court dismissed del Campo's § 1983 and Art. I, § 7 causes of action with prejudice based on her failure to state a claim. In *Medina v. Mealing*, Plaintiff Medina also filed a class action against the Defendants for violations of § 1983 and Art. I § 7. On February 1, 2006, the Court consolidated Plaintiffs' cases into the present action. (Order Granting Motion to Consolidate Case, Docket Item No. 161.)

Before the Court are three separate motions to dismiss. All Defendants move to dismiss Plaintiffs' allegations that they violated § 1983 and Art. I, § 7. Defendants Mealing, Hasney, Fundamentals, Strategies, and Fulfillment ("Individual Defendants") move to dismiss all eight of Plaintiffs' causes of action. ACCS also filed a separate motion to dismiss all eight of Plaintiffs' claims against them on jurisdictional grounds.

## III. STANDARDS

### A. *Dismissal Pursuant to 12(b)(1)*

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a motion to dismiss for lack of subject matter. It is a fundamental precept that federal courts are courts of limited jurisdiction. Limits upon federal jurisdiction must not be disregarded or evaded. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). A Rule 12(b)(1) motion may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir.2004). The plaintiff has the burden to establish that subject matter jurisdiction is proper. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *In re Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir.2001). This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper

basis for the court to assert subject matter jurisdiction over the action. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Fed.R.Civ.P. 8(a)(1).

### B. *Dismissal Pursuant to 12(b)(6)*

A complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A claim may be dismissed as a matter of law for "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory." *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). In determining the propriety of a Fed.R.Civ.P. 12(b)(6) dismissal, a court may not look beyond the complaint. *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 (9th Cir.1998) ("The focus of any Rule 12(b)(6) dismissal ... is the complaint.") A court may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir.2000).

### IV. *DISCUSSION*

Defendants' motions to dismiss focus primarily on Plaintiffs' First, Second, Fourth and Seventh claims. Defendants ACCS and the District Attorney additionally move for dismissal of the complaint based on jurisdictional grounds.

### A. *State Immunity*

The District Attorney and ACCS Defendants contend that they are entitled to immunity under the Eleventh Amendment of the United States Constitution.

The Supreme Court has held that the purpose of the Eleventh Amendment is to protect state sovereignty and that the Constitution never contemplated allowing federal jurisdiction over unconsenting states. *See Seminole Tribe v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). This concept of state immunity has also been extended to entities or persons acting on behalf of the state. For immunity to apply, the entity must establish it acted as "an arm of the state" and did not waive its right to immunity. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 70–71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). However, if it is acting on behalf of a municipality, Eleventh Amendment immunity would not apply. *See Id.; Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690–91 fn. 54, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Counties are treated similarly to municipalities and thus are not entitled to immunity under the Eleventh Amendment. *See McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785–793, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997).

#### 1. District Attorney

The question in this case is whether the District Attorney was acting as a prosecutor when fashioning the diversion program and is thus entitled to Eleventh Amendment Immunity.

It is widely recognized that the district attorney in California fulfills the dual role of a county and state official. *See Ceballos v. Garcetti*, 361 F.3d 1168, 1182 (9th Cir.2004), rev'd on other grounds, —— U.S. ——, 126 S.Ct. 1951, 164

L.Ed.2d 689 (2006); *Pitts v. County of Kern,* 17 Cal.4th 340, 359, 70 Cal.Rptr.2d 823, 949 P.2d 920 (Cal.1998). Whether or not the district attorney is entitled to immunity under the Eleventh Amendment is dependent on whose behalf the district attorney was acting. *See McMillian,* 520 U.S. at 785–86, 117 S.Ct. 1734. Immunity requires an examination of state laws to determine whether the district attorney's alleged acts fall within the range of the district attorney's duties as a state or county official. *McMillian,* 520 U.S. at 785–86, 117 S.Ct. 1734; *Pitts,* 17 Cal.4th at 352, 70 Cal.Rptr.2d 823, 949 P.2d 920. It is not enough to declare that the district attorney was acting as a county official simply because the California Constitution delegates that title to him. Instead, the focus of the inquiry is on the function that the district attorney fulfills. *McMillian,* 520 U.S. at 786, 117 S.Ct. 1734.

█ The California Supreme Court has held that when the district attorney is acting as a prosecutor he is doing so on behalf of the state and immunity applies. *Pitts,* 17 Cal.4th at 360, 70 Cal.Rptr.2d 823, 949 P.2d 920. The role of prosecutor encompasses all actions in relation to "preparing to prosecute, prosecuting crimes and establishing policy and training employees in this area." *Id.* In concurrence with this decision, the Ninth Circuit has held that, under California law, the authority to oversee the district attorney's conduct is given to the Attorney General in areas related to law enforcement. *Weiner v. San Diego County,* 210 F.3d 1025, 1030 (9th Cir.2000). Deciding not to prosecute is also considered within the realm of the district attorney's prosecutorial power. *Roe v. City & County of San Francisco,* 109 F.3d 578, 583 (9th Cir.1997). However, some courts have held that the district attorney, when acting in an administrative role, investigative role or other roles, is a policymaker on behalf of the county. *See Ceballos,* 361 F.3d at 1182–83; *Bishop Paiute Tribe v. County of Inyo,* 275 F.3d 893, 908 (9th Cir.2002), rev'd on other grounds, 538 U.S. 701, 123 S.Ct. 1887, 155 L.Ed.2d 933 (2003). In the Ninth Circuit, federal courts have also held that a district attorney in California is presumed to be a county official unless he is acting as a prosecutor. *Ceballos,* 361 F.3d at 1182.

Plaintiffs' main allegations of liability rest on the District Attorney's methods of contracting with the ACCS Defendants to administrate the Bad Checks Program. Specifically, Plaintiffs allege that the District Attorney violated their constitutional rights by allowing ACCS "blanket authorization [ ] to conduct the Bad Check Restitution Program in the District Attorney's name without providing any meaningful supervision of, or control over, ACCS's actions." Plaintiffs allege that the District Attorney also allows the ACCS Defendants to send form letters in his name without knowing the contents of these letters. (Compl. ¶ 82–83.) The Court looks at the history of diversion programs and the statute at issue, California Penal Code § 1001.60, to determine whether these are state or county programs and thus, whether the District Attorney was acting as a prosecutor or a county policymaker.

In 1982, the legislature enacted two separate statutory schemes authorizing local entities to adopt various versions of a pretrial misdemeanor program codified in Title 6, Part 2 of the Penal Code. The first scheme, Title 6, Chapter 2.7, sections 1001 to 1001.9 ("Ch. 2.7") is not directly at issue here. The second scheme, Chapter 2.9, sections 1001.50 to 1001.75 ("Ch. 2.9") is the diversion program. Both chapters are local option schemes that leave the decision to implement such diversion programs to the county board of supervisors, conditioned on the approval of the district attor-

ney, in order to meet the individual needs of each county. *Davis,* 46 Cal.3d at 76, 249 Cal.Rptr. 300, 757 P.2d 11. The purpose of conditioning the program's implementation on the district attorney's approval was to allow the district attorney to retain discretionary power over eligibility requirements, not to couch the entire program within the district attorney's prosecutorial power.[5] *See Id.* at 77–78, 249 Cal.Rptr. 300, 757 P.2d 11. The history of the statutory scheme leads the Court to conclude that the legislature had no intention of implementing a state-wide diversion program. Instead, the legislature reinforced the local aspect of the diversion program to counteract some uncertainty created by comments made by the Attorney General. *Id.* at 74, 249 Cal.Rptr. 300, 757 P.2d 11. It is clear that the diversion programs are local programs implemented on behalf of the county.

In this case, the District Attorney's decisions to contract with ACCS and in structuring the distribution of work between his office and ACCS in running the Bad Checks Program are purely administrative decisions that have no connection to the District Attorney's role as a prosecutor. Those actions have no bearing on a District Attorney's responsibilities in "prosecuting a crime, preparing to prosecute, or creating policies or training officials in this area." *Pitts,* 17 Cal.4th at 360, 70 Cal. Rptr.2d 823, 949 P.2d 920. The purpose of the diversion program is to delay prosecution of individuals based on certain eligibility requirements. California Penal Code § 1001.70. While the District Attorney would have immunity for decisions regarding who is eligible for the diversion program, *Davis v. Mun. Court,* 46 Cal.3d 64,

77, 249 Cal.Rptr. 300, 757 P.2d 11 (Cal. 1988), how to notify a person of their eligibility is not a component of that decision making process. The alleged factual basis for this lawsuit is not connected to the District Attorney's prosecutorial function.

Based on the facts alleged and an examination of the state laws and legislative history of diversion programs, the Court finds that the District Attorney was not acting as a prosecutor but as a county policymaker in implementing certain aspects of the diversion program. As such, he is not entitled to absolute immunity for acting in his prosecutorial capacity as a state actor. The Court has jurisdiction to determine Plaintiffs' claims against the District Attorney for his alleged actions in implementing the diversion program and contracting with ACCS Defendants to administrate it.

**2. ACCS Defendants**

■ The ACCS Defendants contend even if the District Attorney does not have immunity, they have separate immunity based on their status as "an arm of the state."

■ Courts have extended Eleventh Amendment immunity to a private corporation when the corporation is determined to be an "arm of the state." *See U.S. ex rel. Barron v. Deloitte & Touche, LLP,* 381 F.3d 438, 444 (5th Cir.2004); *Shands Teaching Hosp. & Clinics, Inc. v. Beech Street Corp.,* 208 F.3d 1308, 1311, 1313 (11th Cir.2000). In the Ninth Circuit, to determine whether an entity is an "arm of the state," courts look at a number of factors, including: 1) whether a money

5. Although the legislature labeled the district attorney a "prosecutor" in giving him the approval power over the implementation of diversion programs, this does not necessarily indicate that the alleged acts fall within the

district attorney's prosecutorial role. Courts cannot rely merely on a label. Instead, the proper analysis requires a review of state law and the function the district attorney fulfills. *McMillian,* 520 U.S. at 786, 117 S.Ct. 1734.

judgment would be satisfied out of state funds, 2) whether the entity performs central governmental functions, 3) whether the entity may sue or be sued, 4) whether the entity has the power to take property in its own name or only the name of the state, and 5) the corporate status of the entity. *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198 (9th Cir.1988). "To determine these factors, the court looks to the way state law treats the entity." *Id.* For example, for the first factor, defining who is legally obligated instead of who is financially responsible may allow a court to determine Eleventh Amendment immunity based on the pleadings. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n. 5, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997).

In this case, ACCS Defendants contend that even as private corporations, they were acting on behalf of the state in implementing the diversion program. The Court has already determined that the diversion program in Santa Clara County is a county program and not a state program. The language and history of the statute clearly indicate that the legislature intended for the diversion program to be a county program. *See Davis*, 46 Cal.3d at 75, 249 Cal.Rptr. 300, 757 P.2d 11. The statutory scheme is such that the board of supervisors within each *county* is responsible for finding funding for the diversion program and ratifying its implementation. Cal.Penal Code § 1001.60. . Given that each county is not required to implement the diversion program, ACCS's involvement in the diversion program cannot be a central function of the state government. The ACCS Defendants were acting on behalf of the county in implementing the diversion program. Therefore, the state's Eleventh Amendment immunity does not apply to ACCS Defendants. The Court has jurisdiction to determine Plaintiffs' claims over ACCS.

**B. *First and Second Claims: Fourteenth Amendment, 42 U.S.C. § 1983 and California Constitution Art. 1, § 7***

■ Defendants move to dismiss Plaintiffs' 'claims that the diversion program violates the Fourteenth Amendment, 42 U.S.C. § 1983, and the California Constitution, Art. I, § 7, based on res judicata.

■ The doctrine of res judicata provides that a final judgment on the merits bars parties or their privies from raising additional claims on the same cause of action. *Stratosphere Litig. LLC v. Grand Casinos, Inc.*, 298 F.3d 1137, 1142, n. 3 (9th Cir.2002). The Ninth Circuit has held that res judicata applies when: 1) the issues decided in a prior action are identical to the issues in the pending action; 2) the prior action resulted in a final judgment on the merits; and 3) the parties involved in the prior action were either identical to, or in privity with the parties in present action. *City of Martinez v. Texaco Trading & Transp., Inc.*, 353 F.3d 758, 762 (9th Cir.2003). If any of these elements is unmet, res judicata does not apply. *Id.*

The Court had previously dismissed Plaintiff del Campo's claims against Defendants for violations of § 1983 and Art. I, § 7 with prejudice. The Court held that Plaintiff del Campo failed to state a claim that her Due Process rights were violated by Defendants because the diversion program was optional and Defendants clearly indicated and reiterated the optional aspect of the program. (Order Granting in Part and Denying in Part Defs.' Motion to Dismiss ("Order") at 5, Docket Item No. 23.) Additionally, if Plaintiff del Campo had chosen not to participate in the program, she would still have been entitled to a hearing had the District Attorney opted to prosecute her in municipal court. *Id.*

First, Plaintiffs contend that since no judgment has been entered, and since Plaintiff del Campo has not yet had an opportunity to appeal the Court's ruling, there is no final judgment. A dismissal with prejudice under Federal Rule of Civil Procedure 12(b)(6) is considered a dismissal on the merits. *Federated Dept. Stores v. Moitie,* 452 U.S. 394, 399, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). The phrase "final judgment on the merits" is often used interchangeably with "dismissal with prejudice." *Classic Auto Refinishing, Inc. v. Marino (In re Marino),* 181 F.3d 1142 (9th Cir.1999). The Court dismissed Plaintiff's del Campo Due Process claims with·prejudice; this constitutes a "final judgment" for purposes of res judicata.

Second, Plaintiffs contend that res judicata should not apply because the Medina Plaintiffs are not in privity with Plaintiff del Campo. The Ninth Circuit has held that res judicata may also be applicable to persons not originally party to the suit if there is sufficient privity to the original plaintiffs of the first suit. *Irwin v. Mascott,* 370 F.3d 924, 930 (9th Cir.2004). Privity is a flexible concept determined to exist when parties share a sufficient commonality of interest and "are so closely aligned in [their] interest[s] that one is the virtual representative of the other." *Id.* 370 F.3d at 929. *Irwin* provides three factors in examining privity: 1) whether the parties have an identity of relevant interests and share a close relationship; 2) whether the non-party substantially controlled or participated in the named party's suit; and 3) whether the named party had adequate representation of his interests in the prior suit. 370 F.3d at 929–30. In this case, although the del Campo class has not been certified, Plaintiffs' issues and interests in both actions are the same; Plaintiffs seek the same remedies; and both cases are brought by the same counsel. The Court finds that there is privity between the Plaintiffs because they have "an identity of relevant interests and share a close relationship."

Finally, Plaintiffs attempt to save their Due Process claims by alleging in their Consolidated Complaint that Defendants violated the Equal Protection Clause of the Fourteenth Amendment. This claim necessarily fails since it is premised on the assumption that Plaintiffs were forced to pay a fee to avoid prosecution regardless of their ability to pay. (Compl. ¶ 110.) Since the Court has already found that Plaintiffs had the option of enrolling in the diversion program, Plaintiffs also had the option of paying the additional fees to enroll in the diversion program. Defendants' conduct did not violate the Equal Protection Clause of the Fourteenth Amendment.

The Court finds that there was privity and a final judgment with respect to the Due Process claims and therefore, res judicata applies. Plaintiffs' Due Process claims under the Fourteenth Amendment and Art. 1, § 7 of the California Constitution against all Defendants are DISMISSED with prejudice.

## C. *Fourth Claim: Fair Debt Collection Practices Act*

ACCS and the Individual Defendants move to dismiss Plaintiffs' FDCPA claim,[6] contending that 1) criminal restitution is not "debt" and efforts to recover such restitution are not "debt collection" and 2) the individuals cannot be held personally liable as a matter of law since the Consoli-

---

**6.** ACCS Defendants filed a Joinder of Motion with the Individual Defendants' Motion to Dismiss. (*See* Docket Item No. 214.)

dated Complaint fails to allege facts sufficient to pierce the corporate veil.

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "Debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

The Court proceeds to address Defendants' contentions in light of these broadly worded provisions of the FDCPA.

## 1. The ACCS Defendants

The Court is satisfied that Plaintiffs' obligations to honor checks written to pay for "personal, family, or household purposes" qualify as "debt" within the definition of § 1692a(5). The Court finds that ACCS is a private actor attempting to take action to collect a debt against private individuals in order to compensate third party creditors, and thus, is bound by the requirements of the FDCPA. *See, e.g., Liles v. ACCS*, 131 F.Supp.2d 1114, 1119 (S.D.Iowa 2001). There is no dispute that

ACCS was seeking to collect money from Plaintiffs, and subsequently forwarded some portion of those funds to a merchant creditor. The FDCPA exempts from its requirements officers and employees of state governments.[7] ACCS is a private organization with a government contract; it is not a government agency or employee. The provisions of the FDCPA are extremely broad, and there is no exemption for a private actor due to the existence of a contract with a local government, regardless of its underlying purpose or motive. The Court DENIES the ACCS Defendants' motion to dismiss Plaintiffs' Fourth Claim.

## 2. The Individual Defendants

The Court finds that the Individual Defendants' contentions ignore established case law in this area. Courts have held that under the plain language of the FDCPA, an individual can be considered a "debt collector" and be held personally liable without piercing the corporate veil for those acts if the individual materially participated in the debt collection activities. *See Brumbelow v. Law Offices of Bennett and Deloney, P.C.*, 372 F.Supp.2d 615, 618 (D.Utah 2005); *Brink v. First Credit Res.*, 57 F.Supp.2d 848, 862 (D.Ariz. 1999); *Ditty v. CheckRite, Ltd., Inc.*, 973 F.Supp. 1320, 1336–37 (D.Utah 1997); *Newman v. Checkrite Cal., Inc.*, 912 F.Supp. 1354 (E.D.Cal.1995).

In cases relied upon by Defendants, only the Seventh Circuit has founded that an individual cannot be held liable for violations of FDCPA unless the corporate veil has been pierced. *White v. Goodman*, 200 F.3d 1016 (7th Cir.2000); *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir.2000). The only case in the Ninth Circuit cited, *U.S. v. Trans Cont'l Affiliates*, 1997 WL 26297 *8

**7.** The District Attorney is exempted from liability under the FDCPA.

(N.D.Cal.1997), is distinguishable since in that case, it was undisputed that the defendant did not materially participate in conduct that violated the FDCPA. The court used the same reasoning as the courts that have held individuals can be liable, stating that an individual's liability is dependent on the principles of liability in common law tort and agency. *Id.*

In this case, Plaintiffs base the Individual Defendants' liability on allegations that they were actively engaged in debt collecting behavior through their direct management of ACCS and thus, have materially participated in debt collection activities. The Court had previously held that Plaintiffs have sufficiently alleged a claim against ACCS for violations of the FDCPA. (Order at 6–7.) By extension, the question of liability turns on whether the Individual Defendants' activities were sufficient to be considered "material participation." This is a question of disputed fact that cannot be disposed of at this stage of the litigation. The Court DENIES the Individual Defendants' motion to dismiss Plaintiffs' Fourth Claim.

### D. *Seventh Claim: Fraudulent Misrepresentation*

■ The Individual Defendants contend that Plaintiffs have failed to plead fraud with particularity as required under Rule 9(b) of the Federal Rules of Civil Procedure.[8]

■ Rule 9(b) provides that "in all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). However, this heightened level of fraud pleading is read "in harmony" with Rule 8(a)'s "short and plain" statement requirement.

*Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir.1988). Therefore, a fraud claim is sufficiently pled if it "identifies the circumstances constituting the fraud so that a defendant can prepare an adequate answer. While statements of time, place, and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Generally, fraud allegations need to be pled with particularity for each defendant. *Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir.1986).

■ However, there is an exception in cases of corporate fraud where the false and misleading information is conveyed in the form of a "group published document" and a plaintiff alleges that the defendants "either participated in the day-to-day corporate activities, or had a special relationship with the corporation." *Decker v. GlenFed, Inc. (In re GlenFed, Inc., Sec. Litig.)*, 60 F.3d 591, 593 (9th Cir.1995). In such situations, a plaintiff may reasonably presume that the "group published information" is the collective action of the officers and can fulfill the requirements of Rule 9(b) by pleading with particularity the circumstances of the misrepresentation and where possible, the roles of the individual defendants. *Id.* Documents such as press releases, prospectuses, registration statements, and annual reports have been held as group published documents. *Id.* However, analyst reports and public oral statements have been denied this categorization. *In re Network Equip. Technologies, Inc.*, 762 F.Supp. 1359, 1367 (N.D.Cal.1991). The reasoning behind this exception is that there are certain circum-

---

**8.** Individual Defendants did not identify in their motion which of Plaintiffs' claim they are addressing. The Court assumes Defendants are referring to Plaintiffs' fraudulent misrepresentation claim.

stances in which the information is exclusively in the control of defendants. *In re Gupta Corp. Sec. Litig.*, 900 F.Supp. 1217, 1241 (N.D.Cal.1994).

In this case, while the circumstances of fraud have been pled with sufficiency, Plaintiffs have not specifically attributed the fraudulent activity to each of the Individual Defendants in their Consolidated Complaint. However, Plaintiffs have alleged that Defendants' form letters constitute the fraudulent circumstances. The Court finds that by applying the "group published document theory," Plaintiffs have met the requirements of Rule 9(b). The form letters are allegedly produced by ACCS in the course of business and constitute the alleged fraudulent misrepresentation. Plaintiffs have sufficiently pled that Defendants Mealing and Hasney were involved in the day-to-day operations and had complete control of ACCS and the other corporate Defendants. (Compl. ¶¶ 9–10, 15–21, & 24.) Even if form letters are akin to analyst reports and oral statements, the reasoning in those cases does not apply to form letters. For example, with respect to the analyst reports, courts have held that since one would have to presume that the individual defendant provided the false information to the analyst, it cannot be considered a "group published document" to alleviate the pleading burden. *In re Network Equip. Technologies, Inc.*, 762 F.Supp. at 1367. Since form letters are documents that cannot be attributed to a specific individual at the pleading stage and because Plaintiffs have sufficiently pled the circumstances of the fraud, the Court DENIES the Individual Defendants' motion to dismiss Plaintiffs' Seventh Claim for Fraudulent Misrepresentation.

## V.   CONCLUSION

The Court GRANTS in part and DENIES in part Defendants' Motions to Dismiss as follow:

1.   All federal claims for violations of Due Process under 42 U.S.C. § 1983 and Article I, § 7 of the California Constitution—Plaintiffs' First and Second Claims—against all Defendants are DISMISSED with prejudice.

2.   The ACCS Defendants' motion is otherwise DENIED.

3.   It does not appear to the Court that Plaintiffs' Third, Fifth, Sixth, Seventh and Eight Claims are asserted against the District Attorney. Accordingly, the Court DISMISSES District Attorney George Kennedy from the case. To avoid confusion, future filings shall be captioned as: **"Elena del Campo, et al. v. American Corrective Counseling Services, Inc., et al."**

Additionally, the Court GRANTS Plaintiffs' Motion for Leave to File an Amended Consolidated Complaint Adding Representative Plaintiff as follows:

1.   The Court's ruling on all of Defendants' motions shall apply to the Amended Consolidated Complaint and all named Plaintiffs.

2.   The Amended Consolidated Complaint shall not contain any claims that have been dismissed with prejudice.

3.   The Amended Consolidated Complaint shall not contain any claims against any Defendants who have been dismissed with prejudice.

4.   The Amended Consolidated Complaint shall clearly identify which claims are asserted against which Defendants.

5.   The Amended Consolidated Complaint shall be filed no later than twenty (20) days from the date of this Order.