**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KEVIN BREAZEALE; KAREN SOLBERG; KEVIN HIEP VU; NANCY MORIN; NARISHA BONAKDAR, on their own behalf and on behalf of others similarly situated, *Plaintiffs-Appellees*, | Nos. 15-16549 16-16495 |
| v. | D.C. No. 3:14-cv-05266-VC |
| VICTIM SERVICES, INC., DBA CorrectiveSolutions; NATIONAL CORRECTIVE GROUP, INC., DBA CorrectiveSolutions; MATS JONSSON, *Defendants-Appellants*. | OPINION |

Appeal from the United States District Court
for the Northern District of California
Vince Chhabria, District Judge, Presiding

Argued and Submitted September 13, 2017
San Francisco, California

Filed December 27, 2017

Before: Mary M. Schroeder and Richard C. Tallman, Circuit Judges, and Robert H. Whaley,[*] District Judge.

Opinion by Judge Schroeder

## SUMMARY[**]

### Jurisdiction / Arbitration

In an action under the Fair Debt Collection Practices Act and California consumer protection law, the panel: (1) dismissed for lack of jurisdiction an interlocutory appeal from the district court's denial of defendants' motion to strike claims under California's Anti-SLAPP statute, and (2) affirmed the district court's denial of defendants' motion to compel arbitration.

Pursuant to an agreement with the district attorney's office, defendants sent notices to plaintiffs that to avoid criminal prosecution under California's bad check statute, they could participate in California's bad check diversion program, including payment of specified fees. The notices included an arbitration clause.

The panel held that it lacked jurisdiction to review the district court's denial of defendants' Anti-SLAPP motion

---

[*] The Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

because, under the terms of the state statute, such a denial in a case deemed to be filed in the public interest is not immediately appealable.

The panel affirmed the district court's denial of arbitration as to a plaintiff who elected to participate in the diversion program because the diversion program agreement was not a private or commercial contract subject to the provisions of the Federal Arbitration Act.

## COUNSEL

Sean M. Hardy (argued) and Michael A. Taitelman, Freedman & Taitelman LLP, Los Angeles, California, for Defendants-Appellants.

Deepak Gupta (argued) and Matthew W.H. Wessler, Gupta Wessler PLLC, Washington, D.C.; Paul Arons, Law Offices of Paul Arons, Friday Harbor, Washington; Beth E. Terrell and Blythe Chandler, Terrell Marshall Law Group PLLC, Seattle, Washington; for Plaintiffs-Appellees.

R. Orion Danjuma, Rachel Goodman, Nusrat J. Choudhury, and Dennis D. Parker, New York, New York, as and for Amicus Curiae American Civil Liberties Union Foundation Inc.

Jennifer D. Bennett and Brian Hardingham, Public Justice P.C., Oakland, California; David Seligman, Towards Justice, Denver, Colorado; for Amici Curiae Public Justice, The National Consumer Law Center, Towards Justice, and Professors of Arbitration, Consumer, and Contract Law.

**OPINION**

SCHROEDER, Circuit Judge:

Plaintiffs are individuals who are subject to potential prosecution for violations of California's bad check statute, which criminalizes the writing of bad checks with intent to defraud. The Defendants, Victim Services and related companies (collectively, "VSI"), pursuant to an agreement with the District Attorney's office, sent notices to the Plaintiffs that to avoid criminal prosecution they could participate in California's Bad Check Diversion Program, including payment of specified fees. Plaintiffs filed this putative class action claiming VSI's practices violated state law and the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. They seek injunctive as well as monetary relief.

Before us are two consolidated appeals from separate orders of the district court. VSI first pursues an interlocutory appeal of the district court's denial of its motion to strike under California's Anti-SLAPP statute. We lack jurisdiction to consider the district court's denial, however, because under the terms of the state statute, such a denial in a case deemed to be filed in the public interest is not immediately appealable. VSI also appeals the district court's denial of its motion to compel arbitration. We have jurisdiction over that appeal and affirm the arbitration denial because this is not a private contract subject to the provisions of the Federal Arbitration Act. We therefore affirm and remand to the district court for the conduct of further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. California's Bad Check Diversion Program

California's bad check diversion program permits district attorney offices throughout the state to defer prosecution of those accused of writing bad checks if the accused satisfies certain criteria established by statute. The district attorneys may contract with private parties to administer the program. Plaintiffs here allege that VSI, a private administrator under the program, exceeded its statutory authority and administered the program in violation of federal and state laws applicable to debt collection practices.

The bad check diversion program attempts to address a public policy problem facing the California criminal justice system. California criminalizes the writing of bad checks with intent to defraud. *See* Cal. Penal Code § 476a (added in 1907). And while the enactment of this proscription addressed the problem of bad check writing, California began to face a problem of overload: prosecutions of accused bad check writers eventually "inundat[ed] the state's criminal courts." *del Campo v. Kennedy*, 491 F. Supp. 2d 891, 895 (N.D. Cal. 2006), *aff'd*, 517 F.3d 1070 (9th Cir. 2008). In response, California in 1985 passed Cal. Penal Code § 1001.60 *et seq.*, authorizing a diversion program for bad check writers that could be administered by private entities under contract with the local district attorney. The statutory scheme permits, but does not require, district attorneys throughout the state of California to create within their offices a diversion program for those who write bad checks. Of particular relevance here, the statute allows the program to be "conducted by the district attorney or by a private entity

under contract with the district attorney." Cal. Penal Code § 1001.60.

The bad check diversion program is designed to operate in accordance with certain statutory requirements that track the life of a bad check case from investigation to resolution—all without formal criminal prosecution—if certain criteria are met. A district attorney may refer a case to the bad check diversion program only if there is probable cause that the bad check statute has been violated. *Id.* The district attorney's office that receives a grievance suggesting a possible bad check prosecution must also consider a non-exclusive list of factors before deciding to refer cases to the diversion program. *See* Cal. Penal Code § 1001.62. These factors include the amount of the bad check; the check writer's prior criminal record and whether that person has been previously referred to the program; the number of bad check grievances the district attorney has previously received against the person, and "[t]he strength of the evidence, if any, of intent to defraud the victim." *Id.* These factors afford the district attorney discretion to forgo prosecution, for example, of those subject to prosecution for the first time, while focusing the limited resources of the office instead on prosecution of those who have been the subject of numerous accusations.

After the district attorney has considered these factors and concluded that there is probable cause that Cal. Penal Code § 476a has been violated, and that referral to the program is appropriate, the person identified as a potential participant is notified of referral to the program. Such person must receive notice by mail of the referral. *See* Cal. Penal Code § 1001.63. The statute provides the notice must include the date and amount of the check; the name of the payee; the date by which the potential participant must contact someone

designated by the district attorney, and a statement of the penalty for writing a bad check. *Id.* To complete the diversion program successfully, the person must then complete a class conducted by the district attorney, or by the private entity under contract with the district attorney's office, pay full restitution to the victim, and pay the diversion fees. *See* Cal. Penal Code § 1001.64. Pending successful completion of those conditions, the district attorney may "enter into a written agreement with the person to forego prosecution on the bad check for a period to be determined by the district attorney . . . ." *Id*. Admission of guilt is not a prerequisite to placement in the program. *See* Cal. Penal Code § 1001.66.

VSI administers contracts with various county district attorneys in California. VSI is a registered corporation in Delaware, and VSI and its subsidiaries operate in a number of states. Under VSI's contracts, local district attorneys retain prosecutorial discretion and approve the fees VSI requests from bad check writers. VSI receives a cut of the fees collected.

The named plaintiffs in this case each received letters from VSI describing probable criminal prosecution, with a potential punishment of up to a year in jail, if they chose not to participate in the BCDP. The letters they received were sent on district attorney letterhead and were signed by the local district attorney. The letters informed the recipients that they had "been accused of violating California Penal Code 476a," and that they could avoid criminal prosecution by enrolling in the bad check diversion program and paying the associated fees and restitution. The letters provided the recipients thirty days to dispute the allegations in writing, which would be reviewed by the "authorized administrator of

the Bad Check Restitution Program." The letter does not identify VSI by name, although it states that the BCDP is "administered by a private entity under contract" with the district attorney.

Under the terms of the letter, recipients who make full or partial payment of fees and restitution "agree[] to be enrolled in the Bad Check Restitution Program." The letter also includes an arbitration clause, which provides:

> Agreement to Arbitrate: You and Administrator agree to resolve any and all claims and disputes relating in any way to the Program ("Claims"), except for Claims concerning the validity, scope or enforceability of this Arbitration Agreement, through BINDING INDIVIDUAL ARBITRATION before the American Arbitration Association ("AAA"). This means you will be unable to have Claim(s) resolved by a court or jury, or to participate in a class action or class arbitration. Other rights you would have if you went to court may be unavailable or limited in arbitration, including your right to appeal. The only exception to this agreement to arbitrate is that you and/or Administrator may seek relief in a small claims court for Claims within the jurisdiction of that court in any particular state.

The terms then stipulate the agreement is to be governed by and enforceable under the FAA on only an individual basis. No arbitrator or court can "permit or certify a class action, representative action, private attorney-general action or

consolidated arbitration in connection with [the] arbitration agreement." Participants in the program are allowed to opt out of arbitration in writing within sixty days of enrollment in the program.

One of the named plaintiffs, Narisha Bonakdar, elected to participate in the BCDP, while the others declined.

## B. Plaintiffs' Complaint

Plaintiffs instituted this action in the United States District Court for the Northern District of California on December 1, 2014. They filed their First Amended Complaint—the operative complaint in this case—on February 6, 2015.

The complaint alleges VSI's programs violate state and federal consumer-protection laws governing collection abuses, and also shirk the requirements imposed under the very state statutes governing bad check diversion programs. Included were alleged violations of the Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, which governs the conduct of statutorily defined "debt collectors." Plaintiffs allege that VSI's use of official district attorney letterhead conveys the false impression the letters were sent by law enforcement, that the letters contained the false threat that failure to pay would result in arrest or imprisonment, and that the initial form letter failed to contain statutorily required notices, all in violation of the FDCPA's substantive protections. *See* 15 U.S.C. §§ 1692d(6), 1692e(3)–(5), (9), (11), and (14), 1692g(a).

Plaintiffs also allege violations of the California Unfair Competition Law ("UCL"), California Business &

Professions Code § 17200 *et seq.*, which broadly prohibits unlawful, unfair, or fraudulent business practices, as well as false or misleading advertising. Plaintiffs claim that VSI's conduct exceeds the authority granted under the diversion program's governing statutes, and therefore is "unlawful" within the meaning of the UCL. Plaintiffs also allege that VSI's conduct constitutes the unauthorized and deceptive practice of law. Also included were common law claims of fraudulent and negligent misrepresentation.

Plaintiffs further allege that under VSI's administration of this program, no prosecutor has reviewed the evidence against the accused, or made a probable cause determination as required by the statute. Instead, Plaintiffs allege VSI typically receives referrals directly from retailers and private agencies—not from district attorneys. Indeed, Plaintiffs allege that "very few" bad check writers sent collection letters from VSI will ever be prosecuted, even if they make only partial payment or no payment at all.

The remedies pursued are broad. Specifically, Plaintiffs seek declaratory relief that VSI's debt collection practices violate the FDCPA and the California UCL. They seek a preliminary and permanent injunction enjoining VSI from, among other things, continuing to participate in the bad check diversion program and further communicating with accused bad check writers unless disclosing in each communication that it is a debt collector, and not a district attorneys office. Plaintiffs also seek actual damages, restitution, statutory damages under 15 U.S.C. § 1692k, punitive damages, and costs and reasonable attorneys' fees.

## C. VSI's Motion to Strike State Law Claims Under California's Anti-SLAPP Statute

On April 17, 2015, VSI moved under California's Anti-SLAPP law to strike the UCL and fraudulent misrepresentation claims. California passed its Anti-SLAPP statute in 1992 to address a spike in lawsuits aimed at chilling the exercise of the rights to free speech and to petition for redress of grievances. *See* Cal. Civ. Proc. Code § 425.16(a). "SLAPP" stands for strategic lawsuits against public participation. *See Batzel v. Smith*, 333 F.3d 1018, 1023–24 (9th Cir. 2003).

It's helpful to think of a "SLAPP" as a lawsuit defined by a particular strategy:  obtaining an economic advantage over a defendant, and not necessarily the vindication of a cognizable legal right. *See Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 816 (1994), *as modified on denial of reh'g* (Sept. 15, 1994).  The paradigm SLAPP, as a California Court of Appeal has described, "is a suit filed by a large land developer against environmental activists or a neighborhood association intended to chill the defendants' continued political or legal opposition to the developers' plans." *Id.* at 815.  The causes of action favored by those who bring these suits—most often businesses—"are defamation, various business torts such as interference with prospective economic advantage, nuisance and intentional infliction of emotional distress." *Id.* at 816.

Attempting to root out these harassing cases, the California statute provides for pre-trial dismissal of a SLAPP through a "special motion to strike" the cause of action. Cal. Civ. Proc. Code § 425.16(b)(1).  The filing of the motion stays all discovery proceedings.  Cal. Civ. Proc. Code

§ 425.16(g).  A court's order granting or denying a special motion to strike was immediately appealable under the original SLAPP statute.  Cal. Civ. Proc. Code §§ 425.16(i), 904.1(a)(13).  Recognizing in 2003 that the statute may have gone too far, however, the legislature added an exception, so the statute now "does not apply to any action brought solely in the public interest or on behalf of the general public[.]" Cal. Civ. Proc. Code § 425.17(b).  This has come to be known as the statute's "public-interest exception."  *See, e.g.*, *Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903, 914 (2004).

A litigant defending against a motion to strike by invoking the public interest exception must make the following showing:

> (1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member . . . .

> (2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons.

> (3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter.

Cal. Civ. Proc. Code § 425.17(b).

While orders disposing of SLAPP motions remain generally immediately appealable, there is no right to immediate appeal when the trial court has determined the public interest exception applies. *See* Cal. Civ. Proc. Code § 425.17(e) (providing no immediate appeal "[i]f any trial court denies a special motion to strike on the grounds that the action or cause of action is exempt" under the public-interest exception).

In VSI's motion to strike, it argued plaintiffs were seeking to discourage VSI's communications made in connection with proceedings authorized by law, and that plaintiffs did not have a reasonable possibility of prevailing because, inter alia, VSI was entitled to prosecutorial immunity. VSI also argued the public interest exception to the Anti-SLAPP statute did not apply. The district court rejected these contentions and denied VSI's Anti-SLAPP motion on the ground that the case was within the public-interest exception.

On August 3, 2015, VSI filed its notice of appeal from the district court's order. The district court subsequently denied VSI's motion to stay proceedings pending appeal, and it also denied plaintiffs' motion to certify VSI's appeal as frivolous.

## D. VSI's Motion to Compel Arbitration

After filing its Anti-SLAPP appeal to this Court, VSI filed in the district court a motion to compel arbitration against Narisha Bonakdar, the only plaintiff who had elected to participate in the BCDP and hence the only plaintiff party to the arbitration agreement. VSI contended that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, applied and required arbitration of Bonakdar's claims.

The district court twice requested further briefing as to whether the FAA applies.  Then in an order filed July 27, 2016, the district court denied VSI's motion to compel arbitration, concluding the FAA does not apply to the type of agreement at issue here, which it described as "an agreement between a criminal suspect and the local authorities about how to resolve a potential state-law criminal violation."  The agreement was outside the purview of the FAA and not "a contract evidencing a transaction involving commerce" as Congress intended in 9 U.S.C. § 2.  The court then applied California law and concluded the agreement between Bonakdar and the El Dorado County District Attorney is contrary to California public policy because California public policy requires the conduct of its agents be subject to judicial review.  VSI on August 24, 2016, filed its notice of appeal to this Court from the district court's order denying the motion to compel arbitration.  We then granted VSI's motion to consolidate these appeals.

In its consolidated appeals, VSI argues the district court erred in applying the Anti-SLAPP statute's public interest exception.  VSI also argues the district court erred in denying its motion to compel arbitration.  We address each issue in turn, agreeing with plaintiffs that we lack jurisdiction to review the denial of the Anti-SLAPP motion and that the district court correctly denied the motion to compel arbitration.  The facts for purpose of this appeal are not disputed and both appeals present issues of law we review de novo.

# ANALYSIS

## A.  This Court Lacks Appellate Jurisdiction to Review the District Court's Denial of VSI's Motion to Strike

VSI attempts to appeal on an interlocutory basis the district court's denial of its motion to strike under California's Anti-SLAPP statute.  *See* Appeal No. 15-16549. Our appellate jurisdiction is generally limited to "final decisions" of district courts. 28 U.S.C. § 1291.  Some orders, however, finally decide issues collateral to the merits of the case and are appealable as collateral orders.   Under the "collateral order doctrine," federal appellate courts have jurisdiction over "not only judgments that 'terminate an action,' but also a 'small class' of collateral rulings that, although they do not end the litigation, are appropriately deemed 'final.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–46 (1949)).   To establish jurisdiction under the collateral order doctrine, the appellants must show the order they seek to appeal determines the disputed question conclusively, resolves an important issue completely separate from the merits of the action, and is effectively unreviewable on appeal from a final judgment. *See Will v. Hallock*, 546 U.S. 345, 349 (2006) (citation omitted).

VSI argues this Court's decision in *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003), expressly permits interlocutory appeals from district court rulings on motions to strike under California's Anti-SLAPP statute.   Yet later statutory history shows our decision in *Batzel* is no longer controlling.  In *Batzel*, relying on analysis similar to that we

use in considering issues of qualified immunity, we concluded we had collateral order jurisdiction to review an appeal from a trial court's denial of a motion to strike under California's Anti-SLAPP law, as it then provided. *Id.* at 1024–26. We looked to California's legislative intent and reasoned the statute's provision granting the right of immediate appeal from a denial of a motion to strike, Cal. Civ. Proc. Code § 425.16(i), was to ensure that if the statute applied there would be no trial. "California lawmakers wanted to protect speakers from the trial itself rather than merely from liability." *Batzel*, 333 F.3d at 1025. A defendant's rights under the California statute, we said, are thus "in the nature of immunity: [t]hey protect the defendant from the burdens of trial, not merely from ultimate judgments of liability." *Id.* We were bound by the state law. We said that because "California law recognizes the protection of the anti-SLAPP statute as a substantive immunity from suit, this Court, sitting in diversity, will do so as well." *Id.* at 1025–26.

After our decision in *Batzel*, however, the California legislature amended the Anti-SLAPP law to add the public-interest exception to the right of immediate appeal of orders denying Anti-SLAPP motions. The amendment effectively stripped the right of immediate appealability from all cases in which the trial court determines the public interest exception applies. *See* Cal. Civ. Proc. Code § 425.17(e) (providing "[i]f any trial court denies a special motion to strike on the grounds that the action or cause of action is exempt" under the public-interest exception, the appeal provisions "do not apply"). The law has thus changed since we decided *Batzel*. That case is no longer controlling. The California legislature has now made the substantive determination that in public interest cases, the Anti-SLAPP statute does not provide immunity from suit, and denials of Anti-SLAPP motions to

strike are no longer immediately appealable. Here, as in *Batzel*, we must follow the intent of the California legislature under the applicable state law. *See Batzel*, 333 F.3d at 1025–26.

Accordingly, we lack jurisdiction to review the district court's order denying the motion to strike. The appeal from that order must be dismissed for lack of jurisdiction.

## B. Denial of the Motion to Compel Arbitration

VSI separately appeals on an interlocutory basis the district court's denial of its motion to compel arbitration. *See* Appeal No. 16-16495. The parties in this appeal do not dispute our appellate jurisdiction. It rests on 28 U.S.C. § 1292 and 9 U.S.C. § 16. For the reasons that follow, we affirm the district court's order denying the motion to compel arbitration.

VSI relied on the arbitration provision in the diversion agreement, invoking the FAA. The FAA has preemptive sweep and requires that arbitration agreements be enforced like other private contractual agreements. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341, 352 (2011) (the FAA displaces state law rules that prohibit "outright the arbitration of a particular type of claim," or that pose an obstacle to the "accomplishment and execution of the full purposes and objectives of Congress" in passing that Act) (internal quotation marks and citation omitted).

The Act provides:

> A written provision in any maritime transaction or a contract evidencing a

transaction involving commerce to settle by
arbitration a controversy thereafter arising out
of such contract or transaction, or the refusal
to perform the whole or any part thereof, or an
agreement in writing to submit to arbitration
an existing controversy arising out of such a
contract, transaction, or refusal, shall be valid,
irrevocable, and enforceable, save upon such
grounds as exist at law or in equity for the
revocation of any contract.

9 U.S.C. § 2. The district court concluded the FAA does not
apply to an arbitration provision in the type of agreement at
issue in this case. The court reasoned the agreement was not
"a contract evidencing a transaction involving commerce"
under 9 U.S.C. § 2. The district court explained its reading
was supported by the language of the FAA and further
bolstered by the lack of any indication that Congress intended
the FAA to cover agreements between prosecutors and
criminal suspects resolving potential violations of state law.
The district court observed that even if Congress intended the
FAA to capture the type of agreement at issue in this case,
"this would likely exceed the scope of Congress's commerce
power."

We agree with the district court that Congress never
intended the FAA to apply to agreements between citizens
and prosecutors resolving an individual's potential criminal
liability. As the Supreme Court's seminal decision in
*Concepcion* noted, the FAA applies to privately negotiated
commercial agreements. *See* 563 U.S. at 344. An agreement
with an entity acting on behalf of a prosecutor is not a private
agreement. The FAA would therefore provide no basis to
compel arbitration here or in any contract where the

underlying agreement is a plea agreement, quasi-plea agreement, or deferred prosecution agreement between an individual and a party acting on behalf of the state.

The history of the FAA, the various cases construing its reach, and the body of law governing the formation and interpretation of plea-agreements bear this out. The Supreme Court has recognized the import of the history leading up to the FAA. Because courts were refusing to order arbitration, "[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered . . . ." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). As the Court pointed out in *Concepcion*, "[t]he FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." 563 U.S. at 339. That judicial hostility dated back centuries to a time when English courts "refused to enforce specific agreements to arbitrate upon the ground that the courts were thereby ousted from their jurisdiction." *Byrd*, 470 U.S. at 220 n.6 (1985) (quoting H. R. Rep. No. 96, 68th Cong., 1st Sess., 1–2 (1924)). This hostile principle became embedded in the English common law and was thereby adopted by the American courts. *Id.* It would take an act of Congress to place arbitration agreements on an equal footing with other contracts. Enter the FAA.

The point of the FAA was to enforce private agreements between contracting parties. A unanimous Supreme Court surveyed the history of the FAA and expressly stated that intent: "[t]he legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate." *Id.* at 219. The Court went on to explain that it is the contractual intent of the parties that controls. The Act "does not mandate the

arbitration of all claims, but merely the enforcement—upon the motion of one of the parties—of privately negotiated arbitration agreements." *Id.* The Court apparently believed the point worth repeating. *See id.* at 221 (stating "[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered").

The Supreme Court again considered the history of the FAA in *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989). The Court once more emphasized the FAA's primary purpose is to ensure enforcement of private agreements to arbitrate. *Volt*, 489 U.S. at 479. The Court said the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Id.* at 478. Over twenty years later, in an opinion emphasizing the robust reach of the FAA, the Supreme Court in *Concepcion* repeated that the Act's "'principal purpose' . . . is to 'ensur[e] that *private* arbitration agreements are enforced according to their terms.'" 563 U.S. at 344 (quoting *Volt*, 489 U.S. at 478) (emphasis added).

Against this historical backdrop, it is apparent that Congress never contemplated that the FAA would apply to agreements between prosecutors and citizens resolving alleged violations of a state's criminal law. VSI, of course, can point to a steady march of Supreme Court cases affirming the broad reach of the FAA, but all the underlying disputes arose from privately negotiated agreements. *See, e.g.*, *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421 (2017) (private agreements between nursing homes and residents' relatives); *Concepcion*, 563 U.S. at 333 (agreement between cell phone provider and customers); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (contract of

employment); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) (agreements between individuals and check cashing service); *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265 (1995) (agreement between homeowner and company for protection against termite infestation); *Volt*, 489 U.S. at 468 (construction contract governing installation of electrical conduits); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) (consulting agreement between two corporations). None even remotely suggest the FAA's application in the criminal law context.

VSI similarly fails to direct us to any cases from the federal courts of appeals suggesting the FAA applies to plea agreements, quasi-plea agreements, or deferred-prosecution agreements. Indeed, the only authority we have located that discusses the issue dismissed any contention that the FAA could apply. In *Neal v. LaRiva*, the Seventh Circuit ruled the Bureau of Prisons was not required to arbitrate a dispute with a prisoner because "the Federal Arbitration Act governs only maritime contracts and contracts involving interstate commerce," and the prisoner's documents, which he claimed compelled arbitration of his habeas corpus claim, "involve[d] neither kind of contract." 765 F.3d 788, 790 (7th Cir. 2014)

The foundational principle, underlined repeatedly in all these decisions, as our Court aptly put it not too long ago, is that "[a] plea bargain is not a commercial exchange. It is an instrument for the enforcement of the criminal law." *United States v. Barron*, 172 F.3d 1153, 1158 (9th Cir. 1999) (en banc). Contract law doctrines operate in the realm of criminal plea bargains by analogy only—and even then, "[t]he contract analogy is imperfect." *United States v. Partida-Parra*, 859 F.2d 629, 634 (9th Cir. 1988); *see also*

*Barron*, 172 F.3d at 1158 ("reliance on contract law is by analogy").  In the context of plea bargains, traditional black letter rules applicable to commercial contracts between private parties often yield, as they must, to substantive and procedural requirements, including federal or state rules of criminal procedure, that protect the various rights of the accused.  *See, e.g.*, Fed. R. Crim. P. 11 (governing plea agreements). We acknowledged as much in *Partida-Parra*, when we said "[t]he formation of binding plea agreements is governed not by the Uniform Commercial Code, but by the Federal Rules of Criminal Procedure, which requires, among other things, that the court approve the plea agreement and find it to have a factual basis."  859 F.2d at 634.

We expanded on the nature of plea agreements in *Barron*, where we explained why interests greater than contractual rights are involved:

> A plea bargain is not a commercial exchange. It is an instrument for the enforcement of the criminal law.  What is at stake for the defendant is his liberty.  On rescission of the agreement, the prisoner can never be returned to his "original position":  he has served time by reason of his guilty plea and his surrender of basic constitutional rights; the time he has spent in prison can never be restored, nor can his cooperation in his punishment.  What is at stake for the government is its interest in securing just punishment for violation of the law and its interest that an innocent act not be punished at all.  The interests at stake and the judicial context in which they are weighed

> require that something more than contract law
> be applied.

172 F.3d at 1158.

California courts agree that plea bargains are not the same as private or commercial contracts. In *Brown v. Cty. of Los Angeles*, for example, a California Court of Appeal concluded an appellant's reliance on the California Civil Code to argue plea bargains with minors are void was "misplaced." 229 Cal. App. 4th 320, 323 (2014). The court reasoned the appellant "incorrectly assume[d] that since civil statutes govern contracts in general, they must govern plea bargains as well." *Id.* Plea bargains in California are governed by the California Penal Code, not civil law, and so "principles of contract law should not be imported wholesale into the plea bargaining process." *Id.*

Principles of federalism also militate against the FAA's application in this context. In our system of dual sovereignty, "[s]tates possess primary authority for defining and enforcing the criminal law," and "the administration of criminal justice rests with the States except as Congress . . . has created offenses against the United States." *United States v. Lopez*, 514 U.S. 549, 561 n.3 (1995) (internal quotation marks and citations omitted).

Once it held the FAA did not apply, the district court looked to California law to see whether it would compel arbitration. The district court ruled that an agreement to arbitrate disputes invoking the criminal law would be contrary to public policy. California law supports this conclusion. *See, e.g.*, *Bayscene Resident Negotiators v. Bayscene Mobilehome Park*, 15 Cal. App. 4th 119, 129

(1993) (threats of criminal prosecution "to force individuals to give up their legal rights and to agree to binding arbitration implicates strong public policy considerations"). VSI does not argue that California law would compel arbitration. It simply disagrees with the district court's ruling that state law would prohibit arbitration in this case. The controlling issue with respect to arbitration is therefore whether the FAA applies. The district court correctly decided it does not.

## CONCLUSION

VSI's appeal from the district court's denial of its motion to strike is **DISMISSED** for lack of appellate jurisdiction. The district court's order denying VSI's motion to compel arbitration against Narisha Bonakdar is **AFFIRMED**. We remand to the district court for the conduct of further proceedings.