Filed 6/2/23  Rutenburg v. Twitter CA1/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| MARIA RUTENBURG, Plaintiff and Appellant, v. TWITTER, INC., Defendant and Respondent. | A165615 (San Mateo County Super. Ct. No. 21-CIV-03722) |

Appellant Maria Rutenberg appeals from a judgment of dismissal following the sustaining of respondent Twitter, Inc.'s, demurrer to her first amended complaint.  Rutenberg maintains she adequately alleged a violation of her state constitutional right of free speech based on Twitter's moderating of, and then suspension of, then-President Donald Trump's Twitter account, which prevented her from accessing "the interactive space" on the social media platform for responding to Trump's tweets.  In other words, Rutenberg is not complaining that Twitter moderated or suspended *her* Twitter account, but that it moderated and then suspended Trump's Twitter account and thereby interfered with an asserted state constitutional right to access an "interactive space" to comment on Trump tweets.

Twitter demurred on a number of grounds, including (1) Rutenberg's lawsuit is barred by section 230 of the Communications Decency Act

1

(47 U.S.C. § 230[1]), (2) Twitter is not a state actor, (3) Rutenberg lacks standing to challenge Twitter's action as to Trump's Twitter account, and (4) the action is now moot, given that Trump no longer holds the office of President. The trial court sustained the demurrer on all four grounds and dismissed the case. We affirm.

## DISCUSSION

### *Standard of Review*

"On appeal from a judgment based on an order sustaining a demurrer, we assume all the facts alleged in the complaint (or petition) are true. (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 528. . . .) We accept all properly pleaded material facts, but not contentions, deductions, or conclusions of fact or law. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6. . . .) We may also consider matters subject to judicial notice. (*Ibid.*) We determine de novo whether the complaint (or petition) alleges facts sufficient to state a cause of action under any legal theory. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42. . . .) We read the complaint (or petition) as a whole and its parts in their context to give the pleading a reasonable interpretation. (*Evans v. City of Berkeley*, *supra*, at p. 6. . . .) [¶] When a trial court has sustained a demurrer without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318. . . .) 'The burden of proving such reasonable possibility is squarely on the

---

[1] All further statutory references are to the Act unless otherwise indicated.

plaintiff.' " (*Crestwood Behavioral Health, Inc. v. Baass* (Cal.Ct.App., May 1, 2023, No. C094882) 2023 WL 3166593, at p. *6.)

" 'The judgment must be affirmed "if any one of the several grounds of demurrer is well taken." ' " (*Nisei Farmers League v. Labor & Workforce Development Agency* (2019) 30 Cal.App.5th 997, 1011, quoting *Palestini v. General Dynamics Corp.* (2002) 99 Cal.App.4th 80, 86.) We therefore need not reach all the grounds on which the trial court sustained Twitter's demurrer if any one of them is correct. (See *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 970, fn. 7 [because court concluded there was no statutory cause of action, it "need not consider" whether action "was barred in large part by the statute of limitations, which formed an alternate basis for the . . . trial court's ruling on the demurrer"].)

### *The Communications Decency Act*

The United States Supreme Court has recently summarized the basic aspects of Twitter's business model. "People from around the world can sign up" for such a social media platform "and start posting content . . . , free of charge and without much (if any) advance screening by [the platforms]. Once on [a] platform[], users can upload messages, videos, and other types of content, which others on the platform can then view, respond to, and share . . . , [and] billions of people have done just that. As a result, the amount of content on [such social media] platforms is staggering. . . . [¶] [The platforms] profit from this content largely by charging third parties to advertise on their platforms. Those advertisements are placed on or near the billions of videos, posts, comments, and tweets uploaded by the platforms' users. To organize and present all those advertisements and pieces of content, defendants have developed 'recommendation' algorithms that automatically match advertisements and content with each user; the algorithms generate those

3

outputs based on a wide range of information about the user, the advertisement, and the content being viewed." (*Twitter, Inc., v. Taamneh* (May 18, 2023, No. 21-1496) 598 U.S. — [2023 WL 3511531] at pp. *5–6.)

We need not recite in detail the history and purposes of section 230, as the statutory provision has been discussed at length in cases decided by our Supreme Court and Courts of Appeal. Suffice it to say " 'Congress enacted section 230 "for two basic policy reasons: to promote the free exchange of information and ideas over the Internet and to encourage voluntary monitoring for offensive or obscene material." ' (*Hassell v. Bird* (2018) 5 Cal.5th 522, 534 . . . (*Hassell*) (plur. opn.).) The statute contains express findings and policy declarations recognizing the rapid growth of the Internet, the beneficial effect of minimal government regulation on its expansion, and the twin policy goals of 'promot[ing] the continued development of the Internet and other interactive computer services' and 'preserv[ing] the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation.' (§ 230(a), (b).)" (*Murphy v. Twitter, Inc.* (2021) 60 Cal.App.5th 12, 24 (*Murphy*); accord, *Prager University v. Google LLC* (2022) 85 Cal.App.5th 1022, 1030–1033 (*Prager University*).)

"Section 230(c)(1), which is captioned 'Treatment of publisher or speaker,' states: 'No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.' As relevant here, the statute also expressly preempts any state law claims inconsistent with that provision: 'No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.' (§ 230(e)(3).) Read together these two provisions 'protect from liability (1) a provider or user of an

4

interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.' " (*Murphy, supra*, 60 Cal.App.5th at p. 24.)

"[S]ection 230 is to be construed broadly in favor of immunity. (*Hassell*, [*supra*, 5 Cal.5th] at p. 544 . . . ['broad scope of section 230 immunity' is underscored by 'inclusive language' of § 230(e)(3), which, 'read in connection with section 230(c)(1) and the rest of section 230, conveys an intent to shield Internet intermediaries from the burdens associated with defending against state law claims that treat them as the publisher or speaker of third party content, and from compelled compliance with demands for relief that, when viewed in the context of a plaintiff's allegations, similarly assign them the legal role and responsibilities of a publisher *qua* publisher']." (*Murphy, supra,* 60 Cal.App.5th at p. 25.)

There is no dispute that Twitter is a "provider" of an interactive computer service. (*Murphy, supra,* 60 Cal.App.5th at p. 25; see *Prager University, supra,* 85 Cal.App.5th at p. 1033 [no dispute Google and its subsidiary, YouTube, LLC provide an interactive computer service].)

Rather, the principal dispute is whether Rutenberg is seeking to treat Twitter as a "publisher" of information " 'provided by another information content provider' " (*Murphy, supra,* 60 Cal.App.5th at p. 24), thereby triggering the protection of section 230. Rutenberg insists she is not and that her state free speech claim is based on Twitter's own, independently generated content. Twitter maintains Rutenberg's claim is based squarely on its publisher "editorial" decisions to moderate and then suspend Trump's Twitter account.

Given the extant case law, it is apparent Rutenberg is, indeed, seeking to hold Twitter liable for "typical publisher conduct protected by section 230"—namely " ' "deciding whether to publish, withdraw, postpone or alter content." ' " (*Murphy, supra,* 60 Cal.App.5th at p. 26; see *Prager University, supra,* 85 Cal.App.5th at pp. 1032–1033 [" 'any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230,' " quoting *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC* (9th Cir. 2008) 521 F.3d 1157, 1170–1171 (*Roomates.com*)].)

It makes no difference that Rutenberg has styled her claim as one for violation of free speech rights under our state constitution. Her complaint "targets [Twitter's] election to 'restrict, restrain, and censor [its] content.' In applying section 230(c)(1) and (e)(3), 'what matters is not the name of the cause of action . . . what matters is whether the cause of action inherently requires the court to treat the defendant as the "publisher or speaker" of content provided by another. To put it another way, courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a "publisher or speaker." If it does, section 230(c)(1) precludes liability.' [Citation.] Whether styled as a violation of the California Constitution's guarantee of free speech and association, the Unruh Civil Rights Act's antidiscrimination provisions, the UCL, or defendants' terms of service" the conduct Rutenberg alleges was injurious consisted of Twitter's decisions regarding whether to edit content posted by an account holder or to ban it altogether. (*Prager University, supra,* 85 Cal.App.5th at p. 1033.)

Rutenberg's assertion that her free speech claim targets Twitter as an "information content provider," rather than as an "[i]nteractive [s]ervice

6

[p]rovider" (and thus as a publisher), is belied by the substance of her allegations. She maintains she "properly alleg[ed]" that "Twitter routinely issues its own news and opinion independent of the activity of [its] users" and specifically that Twitter was "publishing its own statements in the context of its own news coverage of the election and physically altering the character of the physical space," thereby intruding on and eliminating the "interactive space" available for commentary. She further asserts her claim "does not depend on the actions of anyone but Twitter."

But even assuming Twitter posts its own news content and does so unilaterally, that is not the basis of her claim. Rather, her claim arises from Twitter's decisions to moderate, and then to remove, content provided by Trump.

Rutenberg alleged, for example, that on the night of the 2020 election, Twitter "erased" a tweet by Trump to the effect " 'they are trying to STEAL the Election.' " When Trump retweeted the message, "Twitter permitted the Tweet to stand but added its warning notices." The day after the election, Twitter "deleted" a Trump tweet. The following day, Twitter "deleted" another post. The day after that, in support of a rally in the capitol, Trump tweeted "at least" three times. "[B]ut all three of those [t]weets were removed by Twitter," and prior to their removal "Twitter applied warning labels and restricted [Rutenberg's] and the public's ability to interact with the tweets." The warning labels stated, for example, "This claim of election fraud is disputed, and this Tweet can't be replied to, Retweeted, or liked due to the risk of violence." This conduct "blocked access to" the allegedly "constitutionally protected zone" to "interact[] with" (e.g., comment on and/or reply to) Trump's tweets. Rutenberg repeated essentially these same allegations with respect to additional tweets by Trump. She further alleged

7

that between November 2 and 8, "Twitter deleted approximately 62 tweets and added approximately 400 warning labels" and then "suspended Trump's account and removed all of Trump's [t]weets entirely."[2]

In short, Rutenberg's allegations demonstrate that her state free speech claim is grounded on Twitter's *editorial* actions with respect to Trump's account, and not on Twitter's origination and posting of independent "news" content.  That these editorial actions *resulted* in an alteration of the "physical interactive space," and specifically the elimination of this space, does not change the fact that her claims are rooted in Twitter's editorial decisions to moderate, and ultimately to suspend, Trump's account.

---

[2] We note that throughout its respondent's brief, Twitter cites to paragraphs of the first amended complaint (e.g., "FAC, [¶] [¶]  4, 9, 70-100, 113") without providing corresponding citations to the *record on appeal*.  This is a patent violation of the California Rules of Court, specifically rule 8.204, subdivision (a)(1)(C) and has greatly inconvenienced the court. "Rule 8.204(a)(1)(C) of the California Rules of Court requires all appellate briefs to '[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears.'  It is well established that ' "[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived.  [Citation.]" ' [Citation.]  This rule applies to matters referenced at any point in the brief, not just in the statement of facts." (*Conservatorship of Kevin A.* (2015) 240 Cal.App.4th 1241, 1253; see *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590, fn. 8 ["Rule 8.204(a)(1)(C) [of the California Rules of Court] is intended to enable the reviewing court to locate relevant portions of the record 'without thumbing through and rereading earlier portions of a brief.' [Citation.]  To provide record citations for alleged facts at some points in a brief, but not at others, frustrates the purpose of that rule, and courts will decline to consider any factual assertion unsupported by record citation at the point where it is asserted."  Quoting *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16].)  This flagrant violation of the rules provided ample justification to decline to file Twitter's brief.  (Cal. Rules of Court, rule 8.204(e)(1).)  While we exercised our discretion to accept the brief, we caution counsel that any further appellate briefing must comply with the California Rules of Court.

Rutenberg's repeated assertion that social media platforms are "public forums" is also unavailing. True, the courts have declared social media platforms to be "public forums" for some purposes. But this does not detract from the established case law broadly construing the substantive protection afforded by section 230. In *Barrett,* for example, our Supreme Court recognized that "[w]eb sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute." (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4 (*Barrett*).) The high court then went on to conclude that, on the merits, the plaintiff's libel claim failed under the "broad immunity" afforded by section 230. (*Barrett,* at pp. 40, 62–63.)

Rutenberg's claim that the "duty" Twitter violated arose not from its protected role as a publisher, but from a supposed state constitutional duty "to refrain from arbitrary censorship and blocking [her] access to a public forum," is likewise unavailing. As we have stated, the label a plaintiff ascribes to a social media platform's conduct is not determinative of whether section 230 bars the lawsuit. "[C]ourts focus not on the name of the cause of action, but whether the plaintiff's claim requires the court to treat the defendant as the publisher or speaker of information created by another. [Citations.] This test prevents plaintiffs from avoiding the broad immunity of section 230 through the ' " 'creative' pleading" of barred claims' or using 'litigation strategy . . . to accomplish indirectly what Congress has clearly forbidden them to achieve directly.' (*Hassell, supra*, 5 Cal.5th at pp. 542, 541 (plur. opn.).)" (*Murphy*, *supra,* 60 Cal.App.5th at pp. 26–27.)

Not one of the many cases Rutenberg cites supports her effort to style her claim here as one aimed not at Twitter's editorial actions, but at its independently generated content. (See, e.g., *Demetriades v. Yelp, Inc.* (2014) 228 Cal.App.4th 294, 298, 313 [section 230 did not bar lawsuit based on

9

Yelp's own claims about the accuracy and efficacy of its "filter" for unreliable or biased customer reviews]; *Doe v. Internet Brands, Inc.* (9th Cir. 2016) 824 F.3d 846, 848–849 [section 230 did not bar negligent failure to warn claim against company that owned Web site and allegedly knew identified rapists were using information posted on the site, not by the rapists but by the victim, to lure the victim to the rape site[3]]; *Roommates.com*, *supra*, 521 F.3d at p. 1165 [section 230 did not bar civil rights claim against Web site that matched people renting out spare rooms with people looking for a place to live based on the site's generation and use of a profile form, as the form and questions therein were "entirely" the site's "own acts"]; *Nunes v. Twitter, Inc.* (N.D. Cal. 2016) 194 F.Supp.3d 959,960, 962, 967 [Twitter was potentially liable under the Telephone Consumer Protection Act because it was the "make[r]" of unsolicited calls to recycled cell phone numbers that received tweets via text message; section 230 did not apply because the lawsuit was not based on any editorial action by Twitter and sought to stop Twitter's own texts to owners of recycled numbers]; *Fraley v. Facebook, Inc.* (N.D. Cal. 2011) 830 F.Supp.2d 785, 801–803 [section 230 did not bar lawsuit based on allegations Facebook took the plaintiffs' names, photographs, and

---

[3] "In holding that the plaintiff did not seek to hold the defendant liable as a publisher of third-party content, the Ninth Circuit emphasized that her negligent failure to warn claim would not require [the defendant] to remove any user content or otherwise affect how it publishes or monitors such content. . . . Any alleged obligation to warn could have been satisfied without changes to the content posted by the website's users and without conducting a detailed investigation. . . . A post or email warning that [the defendant] generated would involve only content that [the defendant] itself produced." (*Fields v. Twitter, Inc.* (N.D. Cal. 2016) 200 F.Supp.3d 964, 973, affirmed on another ground *Fields v. Twitter, Inc.* (9th Cir. 2018) 881 F.3d 739, 741.) Here, in contrast, Rutenberg's claims are based squarely on Twitter's moderating, and ultimately removal, of Trump's tweets.

likenesses without their consent and used the information to create new content that it published as endorsements of third-party products or services; in this context, the platform was an "information content provider"].)

Nor does Rutenberg's assertion that applying section 230 in the instant case is "contrary" to its purpose "to avoid chilling speech by limiting tort liability to the speaker of the statement," advance her case. As our high court has observed, "another important purpose of section 230 was 'to encourage service providers to self-regulate the dissemination of offensive material over their services.' [Citation.] The legislative history indicates that section 230 was enacted in response to an unreported New York trial court case. [Citation.] . . . There, a service provider was held liable for defamatory comments posted on one of its bulletin boards, based on a finding that the provider had adopted the role of 'publisher' by actively screening and editing postings. 'Fearing that the specter of liability would . . . deter service providers from blocking and screening offensive material, Congress enacted § 230's broad immunity,' which 'forbids the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions.' " (*Barrett, supra,* 40 Cal.4th at p. 44, fn. omitted, quoting *Zeran v. America Online, Inc.* (4th Cir. 1997) 129 F.3d 327, 331.)

There undoubtedly is tension between the dual purposes of section 230—to limit federal regulation and thereby encourage free speech, on the one hand, and to encourage the monitoring and control of content that a private social media platform deems offensive, on the other. (See *Barrett, supra,* 40 Cal.4th at p. 56 [" '[t]here is an apparent tension between Congress's goals of promoting free speech while at the same time giving parents the tools to limit the material their children can access over the Internet," quoting *Batzel v. Smith* (9th Cir. 2003) 333 F.3d 1018, 1028,

11

superseded by statute on other grounds as stated in *Breazeale v. Victim Services, Inc.* (9th Cir. 2017) 878 F.3d 759, 766–767].)  Indeed, Justice Moreno commenced his concurring opinion in *Barrett* by observing "there may be a considerable gap between the specific wrongs Congress was intending to right in enacting the immunity at issue here and the broad statutory language of that immunity." (*Barrett, supra,* 40 Cal.4th at p. 63 (conc. opn. Moreno, J.)  But as Justice Moreno went on to state, "that gap is ultimately for Congress, rather than the courts, to bridge." (*Ibid.*)

In sum, the protection accorded by section 230 is broad and under well established case law, it bars the instant lawsuit against Twitter.[4]

## DISPOSITION

The judgment if AFFIRMED.  Costs on appeal to respondent.

---

[4] We therefore need not, and do not, consider any of the other grounds on which the trial court sustained Twitter's demurrer.

_____

Banke, J.

We concur:


_____

Humes, P.J.


_____

Bowen, Christopher, J.*




**Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.



A165615, Rutenberg v. Twitter